# Richmond

## BOWMAN V. FIRST NATIONAL BANK OF BROADWAY.

### November 20, 1913.

1. PLEADING—*Joinder of Actions.*—The general rule is that demands against the same party may be joined when they are all of the same nature and the same judgment has to be given in each, although the pleas may be different.

2. PLEADING—*Amendments—Departure—Endorser and Guarantor.*—A plaintiff may, by different counts in his declaration, declare on the same notes against the defendant both as endorser and as guarantor, hence there is no departure where the original declaration declares against him as endorser, and the amended declaration declares against him as guarantor.

3. PLEADING—*Amended Declaration—Departure.*—Where an amended declaration asserts rights or claims arising out of the same transaction, act, agreement or obligation as that upon which the original declaration is founded, it will not be regarded as for a new cause of action, however great may be the difference in the form of liability asserted in the original and the amended declarations. The two declarations are regarded as alleging variations in the form of liability to meet the varying phases of the evidence as it may appear.

4. PLEADING—*Action Against Guarantor—Plaintiff's Title.*—In an action against the guarantor of a note, an averment in the declaration that the note was payable to the defendant, and that "the defendant for a valuable consideration, in writing, undertook, promised and guaranteed the payment" (of the note) "to the plaintiff," necessarily implies that the plaintiff had become and was the owner or legal holder of the note, the payment of which to the plaintiff the defendant had guaranteed, though it would have been better pleading to have averred in terms how the plaintiff became the owner or holder of the note.

5. EVIDENCE—*Admissibility—Endorsement—Denial—Other Similar Endorsements.*—In an action against a son as endorser of notes made by and discounted for his father, where the facts and circumstances tend to show that the son had full knowledge of the use his father was making of his name, fifty-odd other

notes, similarly made, endorsed and negotiated, are admissible in evidence as tending to show that the father had authority to endorse the son's name on the note sued on.

6. EVIDENCE—*General Reputation—Particular Facts.*—The fact that the plaintiff has introduced evidence of a witness' general reputation for truth does not authorize inquiry as to particular facts which may tend to affect his credibility.

7. BILLS OF EXCEPTION—*Excluding Evidence—Answers Not Given.*—If the bill of exception to the action of the court in excluding answers to questions does not show what the answers would have been, it fails to disclose any prejudice to the exceptor.

8. INSTRUCTIONS—*Jury Fully Instructed.*—Where the jury has been fully and sufficiently instructed on every question involved in a case, it is not error to refuse other instructions tendered, even though they correctly state the law.

Error to a judgment of the Circuit Court of Rockingham county in an action of debt. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Bumgardner & Bumgardner* and *Conrad & Conrad,* for the plaintiff in error.

*Charles Winfield,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The defendant in error, the First National Bank of Broadway, brought its action of debt against the plaintiff in error, Sidney L. Bowman, upon two negotiable notes made by Joseph M. Bowman, payable to the order of said Sidney L. Bowman, his son, and by him, as alleged in the original declaration, endorsed to the said bank. To that declaration a plea was filed, in which the defendant denied that he had endorsed the notes or authorized anyone else to do so. Thereupon the plaintiff bank filed an amended declaration, in the second and third counts of which it is alleged that

the defendant, Sidney L. Bowman, for a valuable considera-
tion undertook and guaranteed the payment of the said
notes to the bank. The defendant demurred to the amended
declaration.

The first and fourth grounds of demurrer assigned are
that the defendant could not be sued in the same action as
endorser and guarantor, and that there was, therefore, a
misjoinder of counts or causes of action.

The general rule is that demands against the same party
may be joined when they are all of the same nature and the
same judgment has to be given in each, although the pleas
may be different. Burks on Pl. & Pr., sec. 456, and authori-
ties cited.

Tested by this rule it is manifest there was no mis-
joinder in this case.

Another cause of demurrer relied on was that an action
entirely different from that originally sued on was at-
tempted to be set up in the amended declaration.

In the original declaration, it is true, the demand as-
serted against the defendant is as endorser, and in the
amended declaration the demand asserted is as guarantor
as well as endorser. Both the original and the amended
declarations were based upon the two negotiable notes
made by Joseph M. Bowman, payable to the order of
Sidney L. Bowman, and the recovery of the sum evidenced
by those notes was the object of the action. The plaintiff
might have declared against the defendant originally both
as endorser and guarantor of the notes, and we know of
no reason why he could not amend his declaration and
add counts against him as guarantor of the same notes
after he had filed his plea denying his liability on them
as endorser. Our cases hold that where an amended decla-
ration asserts rights or claims arising out of the same
transaction, act, agreement or obligation as that upon
which the original declaration is founded, it will not be

regarded as for a new cause of action, however great may be the difference in the form of liability asserted in the original and the amended declarations. The two declarations are regarded as alleging variations in the form of liability to meet the varying phases of the evidence as it may appear. *New River Min. Co.* v. *Painter,* 100 Va. 507, 510, 42 S. E. 300, and cases cited.

Another ground of demurrer is that, in the counts against the defendant as guarantor, there are no averments of ownership of or right to collect the notes.

In these counts it is averred that "the defendant, for a valuable consideration, in writing, undertook, promised and guaranteed the payment" (of the said notes) "to the plaintiff." It would have been better pleading to have averred in terms how the plaintiff became the owner or holder of the notes. In each of these counts it is averred that the notes were payable to the defendant's order, and then follow the averments quoted as to the guaranty. These averments, taken together, necessarily imply, as it seems to us, that the plaintiff had become and was the owner or legal holder of the notes, the payment of which to it the defendant had guaranteed.

The next error assigned is to the refusal of the court to set aside the verdict as contrary to the law and the evidence.

The evidence tended to show that from the opening of the plaintiff bank, in the year 1904, to the making of the notes sued on in the year 1908, Joseph M. Bowman had negotiated in and through the plaintiff bank fifty notes or more, which purported to have been made by S. L. Bowman, in which J. M. Bowman was the payee, and which were endorsed by him; that during the same period J. M. Bowman negotiated in and through the plaintiff bank eight or more notes in which J. M. Bowman was the maker and S. L. Bowman was the payee; that the signa-

ture of S. L. Bowman, whether as maker or endorser on
all these notes, as well as the notes sued on, are in the
same handwriting, and that the officers of the plaintiff
bank believed when said notes were negotiated that the
signature of S. L. Bowman on each was his genuine sig-
nature; that when the several notes executed prior to
September, 1906, approached maturity notice thereof was
sent in due and regular course of business to S. L. Bow-
man by mail, with a request on the envelopes in which
they were sent to return to the bank if not delivered; and
that none of the notices thus sent were returned; that in
September, 1906, when J. M. Bowman was absent from
the State, one of said notes was protested for non-pay-
ment and notice thereof mailed to S. L. Bowman, who in
a day or two after protest and before J. M. Bowman had
returned from West Virginia, went to the plaintiff bank in
reference to it and was told that the matter could rest until
J. M. Bowman's return; that a few days afterwards J. M.
Bowman settled the protested note with a renewal note
signed and endorsed in the same manner and in the same
handwriting as to the signatures as was the protested note;
that within ten days after said notice of protest S. L. Bow-
man went to the plaintiff bank again and requested and
instructed its cashier thereafter to send notices of the ma-
turity of such notes to J. M. Bowman as they were his to
take care of, and that afterwards notices of maturity were
mailed to J. M. Bowman alone; that during the said period
two lines of notes were being run in the bank, one line in
which S. L. Bowman was maker and J. M. Bowman en-
dorser, and the other in which J. M. Bowman was maker
and S. L. Bowman was payee, but J. M. Bowman negotiated
and received the proceeds of both lines of notes; that many
of these notes were renewals of former notes; that prior
to the death of J. M. Bowman in 1908 all of the J. M. Bow-
man and S. L. Bowman paper had been paid or converted

into the two notes sued on; that after the death of J. M. Bowman, who had a high reputation for honesty and integrity, his son S. L. Bowman, who seems to have had charge of his estate, went to the plaintiff bank and inquired what was his father's indebtedness to it, and was shown the notes sued on, in which he was payee and endorser; that he manifested no surprise that his name was upon them as endorser, and made no disclaimer as to his liability; that before the maturity of each of said notes he informed the cashier that it was not convenient to take up the notes at that time, and was told by the cashier that if he would sign the "usual waiver" that he felt sure that it would be all right with the bank, and that it would extend the time and not press him for an immediate payment, he having stated that he was going to make sale of property belonging to J. M. Bowman's estate for the purpose of paying its indebtedness; and that he thereupon signed the following, which is stamped on each of the notes: "Payment Guaranteed.  Protest, Demand and Notice of Non-Payment Waived"; that this was the usual form of waiver used by the bank; that some time afterwards, when it became apparent that J. M. Bowman's estate would not pay his indebtedness, the defendant denied that he was liable on the notes as he had neither endorsed nor authorized any one else to endorse or place his signature upon them. Immediately afterwards this action was instituted, but was not pressed until after it was ascertained what amount upon the notes would be realized from the estate of J. M. Bowman.

The defendant testified that his business and his father's at the plaintiff bank were entirely separate, and that he did not at any time in any way give authority, general or special, to sign his name as maker or endorser of the notes his father had discounted at the plaintiff bank, or upon which he was borrowing money; that soon after his father's

death he went to the plaintiff bank to attend to matters of his own, when his attention was called by the cashier to the notes sued on, and the cashier suggested that he could waive protest; that he did not tell the cashier that the signature was not his, or that he was not liable on the notes, because he thought that his father's estate would probably pay out, and that he would be able to "settle up the whole matter and keep that a secret to myself; that he afterwards agreed to waive protest of the notes and did so, but that he never undertook to guarantee the payment of the notes, and received no consideration therefor, and did not know that there was any statement to that effect in the stamped endorsement which he signed; that afterwards when the cashier was attempting to get him to furnish additional security he disclaimed liability, denying that he had endorsed the notes, or that it had been done with his knowledge; that he had never received notices of the approaching maturity of the forty or fifty notes which were sent to him as claimed by the plaintiff bank.

The evidence in the case was clearly sufficient to sustain the verdict of the jury if the case was properly submitted to them.  Two grounds of error are assigned as to the manner in which the case went to the jury—one as to evidence submitted and rejected, and the other as to instructions refused.

The action of the court in permitting to go in evidence the said fifty odd notes hereinbefore mentioned and described, negotiated in and through the plaintiff bank by J. M. Bowman, is assigned as error.

If there had been no evidence tending to show that S. L. Bowman had notice of the discounting of those notes by his father, their admission in evidence would have been improper; but under the facts and circumstances of the case which tended to show that the defendant had full knowledge of the use his father was making of his name, that

evidence was admissible as tending to show that his father had authority to endorse the defendant's name on the notes sued on.

Neither did the court err in excluding evidence that Grim, the cashier of the plaintiff bank (who was a witness in the case), sometimes took advantage of his position as cashier to lend his own money instead of the money of the bank to persons who applied to the bank for loans. The fact that the plaintiff had introduced evidence of the cashier's general reputation for truth did not authorize inquiry as to particular facts which might tend to affect his credibility. 1 Greenleaf on Ev., sec. 461.

Even if the evidence sought to be elicited by the questions set out in bill of exceptions No. 2 as to the irregularities in the manner in which the affairs of the plaintiff bank were managed during the time Grim was cashier had been proper, it does not appear that any prejudice resulted to the defendant from the action of the court since the bill of exceptions does not show what the answer to the questions would have been.

The court refused to give four instructions asked for by the defendant. The rejected instructions were as follows:

10. "The court instructs the jury that though the number of witnesses who testify to a given fact in a case is greater than the number who testify to the contrary upon such fact, yet the jury is not obliged to render their verdict upon such disputed fact in accord with the testimony of the greater number of witnesses, but the jury may accept the testimony of one man as against that of several if under the facts and circumstances of the case the jury believe his testimony entitled to more weight than the opposing evidence.

11. "The court instructs the jury that though (they) should believe the preponderance of the evidence shows that when the note for $1,125.00 was protested in Septem-

b'er, 1905, S. L. Bowman directed the bank to thereafter send notices to his father and not to him as to maturity of notes on which S. L. Bowman was maker or indorser, yet such request alone does not entitle the bank to recover on the notes sued on, but may be considered along with other evidence in determining whether S. L. Bowman gave authority to another to sign his name to the notes sued on.

12. "The court instructs the jury that the burden of proof rests upon the plaintiff in this case to establish by preponderance of the evidence that S. L. Bowman is liable for the debt sued on and if upon any fact essential to create such liability the evidence offered by the plaintiff is contradicted by equally credible evidence of the defendant, then upon such fact the plaintiff has failed to sustain its burden and they must find a verdict in favor of the defendant.

"The jury is instructed that when a signature is forged, or made without the authority of the person whose signature it purports to be, it is wholly inoperative and no right to retain the instrument or enforce payment thereof against any party thereto can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up forgery or want of authority; and if the jury believe from the evidence that the signatures 'S. L. Bowman' as endorser on the two notes sued on were not made by the defendant, or were made without his authority, they must find for the defendant."

Conceding that the propositions of law contained in these instructions were substantially correct, the jury were sufficiently instructed upon each one of them by the instructions which the court gave without objection, and which were as follows:

"1. The jury are instructed that forgery creates no legal right or obligation against the party whose name is forged,

even though the instrument be sought to be enforced by a purchaser for value without notice, and if the jury believe from the evidence that the endorsement of S. L. Bowman upon the two notes sued on was not made by him or by his authority, he cannot be held liable by reason of such endorsement, notwithstanding they may be of opinion that the plaintiff was a purchaser for value without notice and before maturity of the said notes.

"2. The jury are instructed that the defendant, S. L. Bowman, having by his plea and affidavit denied that he either endorsed his name on the said two notes sued on or authorized any one else to endorse his name thereon, the burden of proof is upon the plaintiff to show that the said endorsement of the name 'S. L. Bowman' upon the said notes sued on was made by him or some one duly authorized to put his signature upon the said notes and bind him thereon as an endorser on the said notes, and if the jury believe from the evidence that the said S. L. Bowman did not endorse the said notes, did not authorize any one to endorse them for him, then they cannot find the defendant liable by virtue of such endorsement.

"3. If the jury believe from the evidence that the name of the defendant was used by Jos. M. Bowman, defendant's father, now deceased, without defendant's authority in the endorsement of the two notes in suit, the defendant cannot be bound by such endorsements. But if the jury believe from the evidence that, prior to the making and indorsement of the two notes in suit, Jos. M. Bowman had general authority from the defendant to use his, the defendant's, name in making and endorsing notes to be discounted for the use and benefit of the said Jos. M. Bowman at the Broadway Bank, and that such authority continued up to and included the indorsement of the two notes in suit, then they should find the defendant bound by said indorsements. Authority to bind the defendant by such use of his name

could not arise out of the mere failure of the defendant to notify the bank that he disclaimed liability when apprised of such use of his name, even if it be true that he was so apprised; but if the jury are of the opinion that it is shown by the evidence that the defendant knew by notices from the bank or otherwise that his father was in the habit of using his, the defendant's, name upon paper discounted for his own, the said Jos. M. Bowman's use at the plaintiff's bank and made no disclaimer, or repudiation of the same, the jury has the right to consider such failure to disclaim as an item of circumstantial evidence, to be weighed along with all of the other evidence in the case bearing on the question, in determining whether or not Jos. M. Bowman in point of fact used the name of defendant as endorser on the two notes in suit with defendant's authority or permission, general or special.

"4. The court instructs the jury that a waiver of the protest of a negotiable note is not a contract and does not alter or in any manner affect the rights or liabilities of the parties, except that it dispenses with the necessity of notice to endorsers of the dishonor of the note, and if the jury believe from the evidence that at any time the words 'Payment guaranteed, protest, demand and notice of nonpayment waived' were put by means of a rubber stamp on the back of the notes in suit and signed by defendant, there was no treaty or agreement by which S. L. Bowman was to assume any new or any different liability on the notes, but the whole intent of the parties as expressed in their conversation was to waive the protest, and the defendant signed the same without reading, supposing it to be a waiver of protest only, then the endorsement so stamped on the notes in suit and signed by the defendant can be effectual only as a waiver of protest and the contractual words 'Payment guaranteed' are without binding force to hold the defendant to liability on said notes.

"5. The court instructs the jury that a mere naked promise in writing (not under seal) to pay or guarantee the payment of an existing debt of another, made without any valuable consideration for such promise, is not binding, and, though the jury should believe from the evidence that the defendant signed the writing stamped on the back of the notes, intending thereby to guarantee payment of the same, yet, if the jury further believe from the evidence that the original endorsements were not made by the defendant or by his authority and that such guarantee was made or signed without any valuable consideration either expressly or impliedly agreed on at the time, as an inducement for such guaranty, the defendant cannot be held liable by reason of the words 'Payment guaranteed' and the jury must find for the defendant on that issue.

"6. Where the consideration for the promise of one party is the promise of another party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both parties must be bound or neither is bound.

"And if the jury believe from the evidence that there was no promise on the part of the bank at the time the stamped endorsements on the notes sued on were signed by the defendant, which could be enforced by the defendant, such as delay in the enforcing of the collection of said notes, then they must find for the defendant as to his liability as guarantor.

"7. The jury are instructed that if estoppel by the conduct of the defendant is relied on by the plaintiff, the party sought to be estopped must have caused the other party to occupy a more disadvantageous position than he would have occupied but for such conduct; and, if the jury believe form the evidence that at the time the defendant, S. L. Bowman, signed the stamped endorsement 'Payment guaranteed, protest, demand and notice of non-payment

waived,' the plaintiff was the holder of said notes, that Joseph M. Bowman, the maker of said notes, was dead, and that the plaintiff's rights have not been impaired, nor the prosecution of its rights against the said Joseph M. Bowman, nor the defendant, S. L. Bowman, prevented by his subscribing to the said stamped endorsement, then the jury are instructed that the said defenadnt is not estopped by that act from setting up the defense that the endorsement on said notes was neither made nor authorized by him.

"8. The court instructs the jury that the burden of proof in the case is upon the bank to prove to the satisfaction of the jury by preponderance of evidence every fact essential to place upon the defendant liability for the debt sued on.

"9. The court instructs the jury that they are the sole judges of the weight and credibility of evidence and the jury has the right to discard or accept the testimony or any part thereof of any witness, which the jury regards proper to discard or accept when considered in connection with the whole evidence in the case."

The instructions given covered every question involved in the case and submitted the case to the jury as favorably to the defendant as he was entitled to have it submitted. The jury were fully informed by the instructions given that the burden was upon the plaintiff to prove by a preponderance of evidence every fact necessary to establish the defendant's liability, and that in considering the evidence of the witnesses they were the sole judges of its weight and credibility.

Upon the whole case, the court is of opinion that there is no error in the judgment and that it should be affirmed.

*Affirmed.*