Staunton.

## SCHOOL BOARD OF LIPPS DISTRICT No. 4 OF WISE COUNTY v. SAXON LIME AND LUMBER COMPANY.

### September 20, 1917.

1. IMPLIED CONTRACTS—*Material Used.*—A school board contracted for the construction of a school building. The contractor entered into a contract with the plaintiff to furnish a certain part of the building material for a certain sum. Before the material was delivered the contractor became bankrupt and refused to receive it. Plaintiff then notified the carrier's agent to hold the shipments and not to deliver to any one except upon a written order. Notwithstanding this notice, the carrier delivered the material to an agent of the trustee in bankruptcy of the contractor, who contemplated the completion of the contract with the school board. But the trustee abandoned this idea and so notified the parties in interest, relinquishing his claim for the materials; whereupon the school board proceeded itself to complete the building, using the material in question, with knowledge of all the facts. There was evidence indicating an express promise to pay for the material by the school board, but however that might be, the law will imply a promise by the board to pay for the building materials used. The plaintiff's right to recovery did not depend upon the exercise of the right of stoppage *in transitu.*

Error to a judgment of the Circuit Court of Wise county, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Bond & Bruce,* for the plaintiff in error.

School Board *v.* Saxon Lime, etc. Co. 121 Va. 594. 595

Opinion.

*Vicars & Peery,* for the defendant in error.

Prentis, J., delivered the opinion of the court.

This case arises out of this state of facts: The School Board of Lipps District No. 4 of Wise county, hereinafter called the School Board, entered into a contract with one David J. Phipps for the construction of a school building in the town of Coeburn. Phipps, to whom the plans and specifications had been furnished, entered into a contract with the Saxon Lime and Lumber Company, hereinafter called the plaintiff, for furnishing a certain part of the building material known as mill work, for the sum of $1,-345, delivered at Coeburn, freight prepaid. Before all of this mill work material was delivered to Phipps he became a bankrupt. On August 28, 1913, the very day upon which he filed his petition in bankruptcy, the plaintiff shipped a large part of the material from its place of business at Bluefield, W. Va., and the rest of the material here involved on the next day. Phipps either failed or refused to receive the shipments when they arrived at Coeburn, and the agent of the railway company at Bluefield, having notified the plaintiff thereof, the plaintiff notified such agent to hold the shipments and not to deliver to any one except upon a written order. Notwithstanding this order not to deliver these shipments, the railway company thereafter delivered them at Coeburn to J. W. Smoot, who was acting as the agent for W. E. Barrett, trustee in bankruptcy for Phipps. At that time Barrett contemplated taking upon himself the completion of the contract with the School Board and assuming Phipps' obligations with reference thereto. Smoot, the agent of Barrett, testified that he unloaded it "by the order of Barrett, trustee, with the understanding that he would see that the Saxon Lime and Lumber Company were paid for the lumber." After that time

Barrett, trustee, abandoned his idea of completing the construction of the building, and so notified the parties in interest, and expressly relinquished his previously asserted claim to such materials; whereupon the School Board proceeded itself to complete the building. It used the materials contained in the shipments of August 28th and 29th, which had been placed by Smoot, as the agent of Barrett, trustee, within the uncompleted school building.

By letter of October 6, 1913, the School Board, by J. D. Clay, Jr., chairman, wrote the plaintiff, stating, among other things, that "the bill of material in question was turned over to us by Mr. W. E. Barrett, receiver for D. J. Phipps, and he has asked us to either account to him for same or hold the funds subject to the order of the court." He further says: "* * * as the matter now stands the rights of property will have to be tried in the courts and when in whom equity exists is decided, the School Board will not try to evade payment of the bill."

On October 15, 1913, the attorney for the trustee wired the Saxon Lime and Lumber Company relinquishing all claim to the property delivered to the railway company on August 28th and thereafter.

Mr. J. N. Hillman, superintendent of schools of Wise county, on November 6th, and by authority of the School Board, in response to a request for settlement, wrote the plaintiff indicating a readiness to pay just as soon as he was satisfied the invoice was correct.

There was other correspondence, but what has been referred to is sufficient to show the conditions under which the material was used by the School Board in the construction of the school building. Having failed to secure settlement, the plaintiff instituted its action in assumpsit against the School Board and the bankrupt's estate.

The defense is based upon the idea that the School Board succeeded to Phipps' rights and could claim the benefit of

his contract with the plaintiff, without assuming its obligation. There are several exceptions to the refusal of the court to admit evidence as to the previous transactions between Phipps and the lumber company. In our view the uncontradicted facts show that even if the rejected evidence had been admitted, it presents no defense to the action. Inasmuch as Phipps himself declined to receive the material here involved, because his title thereto had become vested in his trustee in bankruptcy, and the trustee, though he received it from the transportation company, afterwards surrendered all claims thereto, and the School Board, knowing of all these facts, appropriated and used the material involved, the law will imply a promise to pay therefor. Moreover, there is evidence in the case indicating an express promise to pay by those claiming to represent the School Board.

There is some discussion of the right of stoppage *in transitu,* and the claim is made that under the circumstances the plaintiff could not exercise that right. The answer to this is that the plaintiff's right to recovery does not depend upon the exercise of that right. The School Board having used the building material which, when refused by the trustee in bankruptcy, reverted to the plaintiff, should pay for it.

The verdict of the jury in favor of the plaintiff was the only verdict which could properly have been found.

It is probable that this controversy would not have arisen but for the fact that Phipps, the bankrupt, had given bond to the School Board for the performance of his contract to complete the building, and they were cautioned not to do anything which might be construed to release the bonding company, the surety on that bond.

The judgment will be affirmed.

*Affirmed.*