# Richmond

## C. S. TAYLOR BURKE, EXECUTOR, ETC. v. ANNETTE L. GALE.

December 3, 1951.

Record No. 3812.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*John Barton Phillips* and *Henry B. Crockett*, for the plaintiff in error.

*Henry P. Thomas* and *John W. Waller,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

On October 26, 1949, Annette L. Gale, hereinafter called plaintiff, filed her original notice of motion for judgment against C. S. Taylor Burke, Executor of the estate of Maggie L. Eidsness, hereinafter called defendant, seeking to recover for services rendered Mrs. Eidsness, extending over a period of several years prior to her death. A plea of the statute of limitations was filed and plaintiff, over the objection of defendant, was permitted to amend, which amendment alleged that plaintiff had "performed various and sundry personal services at the request of and for the benefit of Maggie L. Eidsness in return for which personal services the said Maggie L. Eidsness promised, covenanted and agreed to make suitable provision for the plaintiff in her will."

To the amended notice the defendant filed a demurrer relying upon two grounds, (1) that it states an entirely new cause of action, and (2) that the allegations are not sufficiently certain and definite to create a contract as a matter of law. The court overruled the demurrer and the defendant filed a plea of the general issue. Upon this issue a jury verdict in favor of plain-

tiff in the sum of $4,000 resulted, and from the judgment of the court entered thereon a writ of error was awarded.

The uncontroverted evidence in this case shows that the plaintiff lived in Arlington county Virginia, that Mrs. Eidsness was her stepmother, having married plaintiff's father, Magnus L. Eidsness, in 1917; both Mr. and Mrs. Eidsness were old and infirm, and for long periods Mrs. Eidsness was confined to her bed. Between February, 1942, and February, 1946, the plaintiff traveled back and forth by bus from her home to the home of Mrs. Eidsness in Alexandria. She made these trips on an average of three times a week except for the occasions when she stayed with her stepmother for several nights at a time because she was too ill to be left alone.

The record shows that plaintiff gave up a job in order to take care of her stepmother, that she nursed her, did the cooking and laundry, and cleaned and managed the home generally. These services were performed by plaintiff until she was compelled to go to a hospital for an operation in February, 1946. Before leaving for the hospital plaintiff took her stepmother to Barcroft where plaintiff's sister lived. Here Mrs. Eidsness was cared for by plaintiff's sister for three and one-half months, and later, Mr. Eidsness having died, she was placed in a nursing home.

Plaintiff testified that Mrs. Eidsness told her in the presence of Mrs. Hall that "she would see that I was taken care of in her will", and on numerous occasions she said, "I will never forget this, I will remember you for this, I will take care of you for this." Plaintiff's sister, Mrs. Hall, corroborated her regarding Mrs. Eidsness' promise to remember her in her will. Mrs. Hall further says that Mrs. Eidsness told her that plaintiff had done so much for her when she was sick "that she would benefit by that in her will". Plaintiff undoubtedly expected this promise to be fulfilled. She took no action to collect for her services until she discovered after Mrs. Eidsness' death that she was left nothing.

Five witnesses in addition to plaintiff testified as to the burdensome services rendered by her to decedent. No evidence was introduced by the defendant, and no attempt was made to show that the services were not rendered. The record shows that the services were faithfully rendered by plaintiff and willingly accepted by the ill and infirm stepmother.

134

The defendant moved to strike the evidence contending that "there hasn't been any evidence to show there was any agreement, express or implied" to compensate the plaintiff.

The jury was amply and properly instructed by the court on all phases of the case. Instruction C gives the plaintiff's theory of the case as follows:

"The court instructs the jury that if you belief from a preponderance of the evidence that Maggie L. Eidsness agreed to make suitable provision in her will for the plaintiff, and that on the strength of this promise, the plaintiff performed services of value for the said Maggie L. Eidsness, for which no certain compensation was agreed on, and that the said Maggie L. Eidsness accepted and profited by such services, then it shall be your duty to find for the plaintiff in an amount equal to the reasonable value of the services performed, together with any bus fare the jury believes from a preponderance of the evidence was expended by the plaintiff in connection with the said services."

Instructions 1 and 2 give the theory of the defendant as follows:

"1. The court instructs the jury that the plaintiff must prove her case by a preponderance of the evidence and if you believe from the evidence that the alleged services by the plaintiff were not rendered in consideration of any promise of Maggie Eidsness to make provision for her in her will, you will find for the defendant.

"The court further instructs the jury that there can be no recovery for service rendered by the plaintiff to her father.

"2. The court instructs the jury that Maggie L. Eidsness, being dead and incapable of testifying, they cannot find a verdict in favor of the plaintiff on the evidence of Annette L. Gale, the said plaintiff, unless her testimony is corroborated upon the material elements thereof, and unless they believe that her testimony is so corroborated, they must find for the defendant, C. S. Taylor Burke, Executor."

█ Under the facts of this case the jury was justified in accepting the plaintiff's theory and in finding a verdict in her favor. *Hendrickson* v. *Meredith,* 161 Va. 193, 170 S. E. 602; *Ricks* v. *Sumler,* 179 Va. 571, 19 S. E. (2d) 889, and *Simpson* v. *Scott,* 189 Va. 392, 53 S. E. (2d) 21.

█ "The recovery for services rendered pursuant to an implied promise to compensate therefor by will, or on an express

promise to devise poperty as compensation for services where the amount of property promised is indefinite, is upon the *quantum meruit* for the reasonable value of the services." 57 Am. Jur., Wills, § 189, p. 167.

Parol contracts of this kind should be carefully scrutinized and corroboration should be required both as to the contract and as to the certainty that the services have been rendered by the promisee to the promisor. In the instant case the plaintiff's evidence has been sufficiently corroborated to sustain the contract and there is no denial that the services were rendered by her to the decedent.

Aside from the danger of fictitious claims as to the existence of this kind of a contract, which is more apparent than real, these contracts serve a very useful purpose, and should receive the approval of the courts, rather than, at least, their tacit disapproval. By virtue of these contracts aged people are able to secure care, attention, support, and maintenance not otherwise procurable, in at least many cases, for it frequently happens that the income from the promisor's estate would be entirely insufficient to secure to them necessary nursing, care, medical attention, support, etc., and, if they had to resort to the principal, it would soon be exhausted. Recourse, however, to a contract of this character insures the retention of, at least, the principal during the life of the owner. * * *" Annotation, 69 A. L. R. 16.

 "* * * In ordinary cases, the law will raise a presumption of a promise to pay from the mere fact of service, and it will prevail unless a contrary intention and understanding of the parties is shown. In such case, the mere fact that the employer intended to make a liberal provision by will in compensation for the services, and so stated, will not defeat a recovery for the value thereof, if he failed or neglected to make the provision. If it was the understanding of the parties that the services were to be paid for, then the intended will was but the method of paying an existing and admitted obligation in compensation for services rendered. If the promisor failed to pay in the manner indicated, the promisee is entitled to recover, as a creditor, for the value of the services. * * *". 69 A. L. R. 98.

 "Mere statements, oral or written, of an intent to give property by will to another do not ordinarily amount to an offer to do so; but a statement cast merely in the form of an

intention may constitute an offer where, in view of accompanying language or circumstances it is designed to induce action in a particular manner and manifests a purpose to carry out the intention mentioned in return for the person to whom it is addressed so acting. The contract may be found in an express promise or may be inferred as a conclusion of fact from the circumstances surrounding the parties. It is not necessary that the offer be expressed with technical legal precision in phraseology, it being sufficient that the promisor used such language as to make his purpose clear. * * * Acceptance may consist not alone of a promise, but, when contemplated by the offer, of the performance of acts of the kind which the offer calls for, and no formal statement of acceptance, written or verbal, is necessary." 68 C. J., Sec. 188, p. 570.

▇ Defendant relies upon several assignments of error. First, he contends that it was error for the court to permit the amendment to the notice of motion for judgment after he had filed his plea of the statute of limitations. There is no merit in this assignment. If the amendment had not been authorized by the court the plaintiff could have brought a new suit. The technical ruling sought by the defendant would have put the plaintiff to extra expense and trouble for no good purpose. The amendment in no sense created a new cause of action. *Bowman v. First Nat. Bank*, 115 Va. 463, 80 S. E. 95.

▇ Defendant's second assignment deals with the court's failure to sustain the demurrer to the amended notice. For the reasons heretofore stated there is no merit in this assignment. The notice stated a cause of action.

▇ Defendant also contends that ''the court erred in permitting plaintiff to be interrogated by her counsel after defendant's motion to strike her testimony.'' The record shows that the attorney for defendant, at various stages in the trial, when the attorney for plaintiff was developing his case, persisted in making motions to ''strike the evidence''. This motion should have been reserved until the plaintiff had rested her case. The court could not intelligently rule upon the motion until all the evidence was in. There is no merit in this assignment.

Error is assigned to that part of a stipulation which admitted the value of the estate. The attorney for the defendant objected to the introduction of the will which was offered by plaintiff for the purpose of showing that Mrs. Eidsness had not provided

for her therein as per the alleged contract. The stipulation is as follows: "It is stipulated that a will was made in 1946, October of 1946; that by that will the plaintiff was not provided for or mentioned; and that Mrs. Eidsness died in February of 1949; and that the value of the estate is $30,000."

According to Black's Law Dictionary, 3rd Ed., a stipulation contemplates "an agreement between counsel respecting business before a court". If the stipulation was agreed to there can be no objection to it. Possibly the only effect of showing the value of the estate would have been to prejudice the jury in giving an excessive verdict, and there is ample evidence to show the verdict in this case was not excessive.

As heretofore indicated, the issues in this case were submitted to a jury under proper instructions, the jury's verdict has been approved by the able trial judge, and we find no reversible error in the record.

The judgment of the court is therefore

*Affirmed.*