## CIRCUIT COURT OF LOUDOUN COUNTY

Sargis & Jones, Ltd.

v.

Moran Associates
Limited Partnership et al.

January 2, 1992

Case No. (Chancery) 13370

BY JUDGE JAMES H. CHAMBLIN

This cause is before the Court on the following:

1. Petition and Motion of Moran Associates Limited Partnership, MSW Associates, and Wayne A. Hobbs to stay Count II of the Bill of Complaint pending arbitration.

2. Demurrer of Hobbs, MSW, and Moran to the Cross-Bill of Brick Doctor, Inc., against Moran and MSW.

For the reasons hereinafter set forth, the Motion to Stay is granted, and the Demurrer is overruled. Each is addressed below.

### I. *Motion to Stay Pending Arbitration*

Moran, MSW, and Hobbs ask this Court to stay Count II (a breach of contract claim) of the Bill of Complaint on the ground that the claim is the subject of an arbitration provision contained in a written agreement between Moran and Sargis & Jones, Ltd. (Sargis & Jones) dated June 5, 1990. Sargis & Jones argues that these three defendants have waived their right to arbitration.

Virginia Code § 8.01–581.01 provides that a "written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, except upon such grounds as exist at law or in equity for revocation

of any contract." Section 8.01–581.02(A) requires a court to order the parties to proceed with arbitration on the application of a party showing an agreement described in § 8.01–581.01 and the refusal of the opposing party to arbitrate. If, however, the opposing party denies the existence of the agreement, the Court "shall proceed summarily to the determination of the existence of an agreement and shall order arbitration only if found for the moving party."

When counsel argued the Motion to Stay on December 10, 1991, each side made certain representations of fact both orally and in their written submissions (the written Motion and memoranda). Neither side objected to any of the representations as being inaccurate. Neither side requested an evidentiary hearing. This Court construes the words "the existence of the agreement" in § 8.01–581.02(A) to include the issue of whether a party has waived its right to compel arbitration and will summarily decide the issue based on the papers filed and the presentations of counsel on December 10, 1991.

The operative circumstances are as follows. Sargis & Jones entered into an agreement dated June 5, 1990, with Moran under which Sargis & Jones was to perform certain construction work described in the agreement on a condominium unit at Loudoun Tech center owned by Moran for the sum of $56,250.00. The work was completed in July, 1990, but Moran has not paid as required by the agreement. The agreement, which is attached as Exhibit A to the Motion to Stay, contains an arbitration provision (Article 10.8). In October, 1990, Sargis & Jones recorded a memorandum of mechanic's lien for the work performed under the agreement.

On March 5, 1991, Sargis & Jones filed the instant suit seeking to enforce its mechanic's lien (Count I) and to recover from Moran, MSW, Hobbs, Stephen A. Wexler and Marie A. Wexler for breach of contract (Count II). The agreement was not referenced in or attached to the Bill of Complaint. It merely alleged that Sargis & Jones had "entered into a contract" with Moran (Paragraph 6) and that it was an "express contract" (Paragraph 33).

The affairs of Moran were managed by Stephen Wexler. Marie Wexler executed the agreement as a general partner of MSW. The two Wexlers and Hobbs are the general partners of MSW, a Virginia general partnership, which is the general partner of Moran, a Virginia limited partnership.

On April 18, 1991, Hobbs, MSW, and Moran filed their Answer by their present counsel. Their Answer recites that Stephen Wexler was

in possession of all the records of Moran, that Hobbs was a "silent" general partner, that the two Wexlers had filed for bankruptcy protection, and that the Wexlers had not responded to a request for the records of Moran.

The Wexlers were nonsuited by order entered August 2, 1991. On the same day, this cause was referred to a Commissioner in Chancery. Sometime in September, 1991, a Commissioner's hearing was set for December 10, 1991.

In mid-September, 1991, Hobbs propounded discovery requests to Sargis & Jones. In response to these requests, Sargis & Jones delivered a copy of the agreement to Hobbs' counsel on October 22, 1991. The Motion to Stay was filed November 5, 1991. It was not until a copy of the agreement was delivered to Hobbs's counsel that he discovered the existence of the arbitration provision. Sargis & Jones has provided other discovery responses to Hobbs, MSW, and Moran, but the extent of the responses cannot be ascertained from the record.

A lender has foreclosed on the subject property, and Moran no longer has an interest therein. These defendants are not seeking to compel arbitration of the mechanic's lien claim of Sargis & Jones.

Since the enactment of the arbitration statutes, the trend established by the courts is one of favoring arbitration as a shortcut to substantial justice. Public policy favors arbitration settlement with a minimum of court interference. *Parsons v. Norfolk & Western Railway*, 310 F. Supp. 1197 (S.D. W. Va. 1970), aff'd, 442 F.2d 1075 (4th Cir. 1971); 2A M.J., *Arbitration and Award*, § 54. There is a strong federal policy of enforcing arbitration agreements where possible. *Land v. Dean Witter Reynolds, Inc.*, 617 F. Supp. 52 (E.D. Va. 1985). Virginia has adopted the Uniform Arbitration Act (Virginia Code § 8.01–581.01 *et seq.*); therefore, Virginia should have a similar policy.

There are very few reported Virginia cases on arbitration. I have found none of them to be on point here. However, I do feel that *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974 (4th Cir. 1985), concerning a similar factual situation under the Federal Arbitration Act is instructive. Accordingly, I am of the opinion that the Motion to Stay should be decided on the basis of whether these defendants have waived their rights under the agreement's arbitration provision by utilizing the judicial process to such an extent that to now compel arbitration would prejudice Sargis & Jones.

Any prejudice to Sargis & Jones would be limited to whatever it has done during the course of this litigation that it would not have done if these defendants had sought arbitration at an earlier date. This cause could still have proceeded on the mechanic's lien claim even if the breach of contract claim against Moran had gone to arbitration. Sargis & Jones has not shown that it would not have proceeded with the mechanic's lien claim or would not have to respond to discovery if the breach of contract claim had proceeded to arbitration. Sargis & Jones may still proceed to enforce its mechanic's lien even if the breach of contract claim against Moran proceeds in arbitration. Sargis & Jones has shown no prejudice if arbitration of the breach of contract claim in Count II is compelled.

Although Sargis & Jones is not required to attach a copy of the agreement upon which it sued to the Bill of Complaint, their failure to do so contributed to the present situation which allows it to make a waiver argument. Further, the answer filed by these defendants on April 18, 1991, should have alerted Sargis & Jones' counsel to the possibility that they may be ignorant of the arbitration provision. Therefore, to some extent Sargis & Jones ran the risk of the possibility of a delayed motion to compel arbitration.

For the foregoing reasons, pursuant to § 8.01–581.02, proceedings as to Count II are stayed, and Sargis & Jones is directed to proceed to arbitration as required by the agreement dated June 5, 1990, if it be so advised.

## II. *Demurrer to Cross-Bill of Brick Doctor Against Moran and MSW*

In its Cross-Bill, Brick Doctor seeks to recover from Moran and MSW the reasonable value of the work done and materials furnished to the real property of Moran on the basis of a quantum meruit or unjust enrichment theory. Moran and MSW demur asserting that despite the theory of recovery, Brick Doctor has alleged the existence of an express contract between it and Sargis & Jones for the work done and materials furnished and that the existence of the express contract precludes recovery on the basis of quantum meruit or unjust enrichment.

A demurrer admits the truth of all facts properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts. *Palumbo v. Bennett*, 242 Va. 248, 249

(1991). As applied to the Cross-Bill, such facts are summarized below.

In June, 1990, Sargis & Jones and Brick Doctor entered into a contract for $11,000.00 by which Brick Doctor was to install a wall at a condominium unit owned by Moran. MSW, a Virginia general partnership, is the general partner of Moran, a Virginia limited partnership. The work and materials were furnished at the request of Sargis & Jones as the agent of Moran and MSW, and they were furnished with the knowledge, consent, and at the direction of Moran. The work and materials have a reasonable value of $11,000.00, and Brick Doctor has not been paid.

Brick Doctor conferred a substantial benefit upon Moran by virtue of its labor and materials and is entitled to be compensated for the reasonable value of the work and materials. Moran has been unjustly enriched in the amount of $11,000.00.

Initially, the existence of the express contract does not, as to the facts alleged in the Cross-Bill, preclude an unjust enrichment claim because the express contract is not with Moran or MSW but with Sargis & Jones from which Brick Doctor seeks no recovery in its Cross-Bill. The lack of privity of contract between the provider of services and materials to real property and the owner of the real property is not a defense if the essential elements of an unjust enrichment claim are proven. *See, Kern v. Freed Co.*, 224 Va. 678 (1983); *School Board v. Saxon Lime and Lumber Company*, 121 Va. 594 (1917).

Where one person renders services for another which are requested and accepted by him, the law creates an obligation by implied contract for him to pay a reasonable compensation. As a general rule, the mere fact of rendering services will raise a presumption of a promise to pay, and it will prevail unless a contrary intention or understanding of the parties is shown. *Burke v. Gale*, 193 Va. 130, 135 (1951). I am of the opinion that the Cross-Bill alleges sufficient facts to state a claim under a theory of quantum meruit or unjust enrichment.

The Demurrer is overruled.