COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Clements
Argued at Richmond, Virginia


CHRISTOPHER J. R. WHITNEY

MEMORANDUM OPINION* BY
v.   Record No. 2267-00-2   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                OCTOBER 2, 2001
BABETTE C. WHITNEY


FROM THE CIRCUIT COURT OF HANOVER COUNTY
John Richard Alderman, Judge

Terrence R. Batzli (Ann Brakke Campfield;
Barnes & Batzli, P.C., on briefs), for
appellant.

Donald K. Butler (Robert G. Cabell, Jr., on
brief), for appellee.


Christopher J.R. Whitney (husband) appeals the final order of

the trial court confirming the commissioner in chancery's report

and affirming, ratifying and incorporating into the final decree

"[t]he contract between the parties" and an order for judgment

entered August 20, 2000. He contends: (1) the trial court erred

on December 16, 1998 when it held that the parties had entered

into a valid written agreement; (2) the commissioner and trial

court erroneously ruled they were bound by Judge Taylor's December

16, 1998 ruling as to the validity of the contract; and (3) the

trial court and commissioner "erred in finding that the parties

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

had entered into a valid agreement" when the evidence before the commissioner "demonstrated there had been no agreement and no meeting of the minds."  We affirm the decision of the trial court.

## I.  BACKGROUND

The parties were married on December 29, 1971.  They separated on February 14, 1997.  Prior to the separation, the parties entered into a reconciliation agreement entitled "Agreement and Stipulation" (the agreement).  Using a document typed by wife's attorney, the parties met without counsel on three occasions between August 1996 and February 1997 to discuss and modify the agreement.  During their meetings, the parties made handwritten additions and deletions, which they initialed. Husband and wife signed the final agreement.  On March 18, 1997, wife filed a bill of complaint seeking a divorce.  The bill of complaint stated that the parties entered into a reconciliation agreement in August of 1996 and asked the court to "adopt, incorporate by reference and make the provisions thereof part of any decree" of the court.  Husband filed an answer contending "the Agreement was signed during a time when [husband] was under severe emotional distress and [husband] will request that the alleged Agreement be deemed null and void."

Section 4 of the agreement contained the following provisions:

> (a)  Husband agrees that he will pay child support under the guidelines then in effect in the Commonwealth of Virginia;

-

  *  *  *  *  *  *  *

   (d)  In the event the parties separate, Husband shall pay to Wife spousal support & child support in an amount to be no less than Thirty Five Hundred Dollars per month beginning the month the parties separate.

Some language had been stricken and initialed, and the specific language "& child support" was added and initialed by the parties.

THE JUNE 10, 1997 TRIAL COURT HEARING

Judge Taylor presided over a June 10, 1997 <u>pendente</u> <u>lite</u> hearing at which husband's attorney made the following representation:

   Your Honor, I've had an opportunity, obviously, to discuss at great length with my client concerning this case.  In our crossbill, we were disputing this agreement in that it was at the time signed in it appears to be a hotly contested time for both of them, but after further talking with my client, the reason he signed the agreement was to make the wife feel comfortable as far as what he should be paying in child and spousal support.  <u>So I'm here to say that we stipulate to the contract.  We're not arguing this contract is not valid after talking further with my client.  I think the point that we're arguing is that it is a valid agreement and that it contains absolutely everything in there concerning child support, spousal support, attorney fees, distribution of the property</u>. . . . [A]nd I mean I'm assuming that since they attached it to the bill of complaint that <u>they</u> felt it was a valid agreement, and if it's a valid agreement, then we've got all of the issues that have already been wrapped up in this case and there's no purpose for today's hearing.

-

      \*      \*      \*      \*      \*      \*      \*

> And if they're here arguing that this paragraph does not read this, then we don't have an agreement at all and then we're going to have to litigate everything in this case <u>whereas it's our position that everything has been handled in this separation agreement</u>. It clearly says child support in the paragraph. It clearly says $3500.00 as far as what the parties have agreed to. And I think 2109 [sic] is very specific. <u>Once they've got a contract, and this is a valid contract, everything has been taken care of in this case</u>.

(Emphasis added.)

Wife's attorney indicated some concern over the inclusion of child support twice in the agreement, once in subsection 4(a) and again in subsection 4(d). Husband's attorney advised the trial court that "the child support was inserted, presumably, by the husband and if you will notice, everything else that has been changed is initialed by both parties." Wife's attorney contended that the handwritten notation "& child support" in subsection 4(d) "was never agreed to and that the typed portion [of subsection 4(a)] is operative." The trial court was reluctant to allow any changes to the agreement, stating "the change of one paragraph throws the whole agreement in dispute."

Husband's attorney stated, "Your Honor, we're standing here ready to abide by this agreement."

The trial judge tried to limit the issues before him, stating:

-

> I'm not worried about who's at fault or anything. If you're asking me to interpret this agreement, then I'm trying to tell you that the agreement is there and can be interpreted. Now, how it falls down to actual figures, I don't know, but that will certainly be determined in about looking about her need and his abilities, like you do in any spousal support.

The parties testified regarding needs, expenses and ability to pay as well as each party's understanding as to the language in the agreement. Husband contended the agreement limited wife to receive no more than $3,500 per month for spousal and child support combined, and wife argued that the agreement was for her to receive no less than $3,500 per month in spousal support in addition to the guidelines amount of child support.

The trial court entered a <u>pendente</u> <u>lite</u> order that same day directing husband to pay the monthly mortgage on the marital home, $646 in child support and $3,000 in spousal support, an amount not less than $3,500 as stated in paragraph 4. Husband's attorney signed the order "Seen and Objected as to amount of support not in accordance with Separation Agreement."

THE NOVEMBER 25, 1998 TRIAL COURT HEARING

On November 25, 1998, the parties again appeared before Judge Taylor. Husband, who discharged his earlier attorney, Mr. Harris, and retained new counsel, Mr. Batzli, moved for the entry of a final decree of divorce. Wife requested that husband be required to show cause why he should not be held in contempt for

-

transferring property in a manner contrary to the trial court's June 10, 1997 pendente lite order.

Wife did not object to the entry of the final decree of divorce as long as the trial court affirmed, ratified and incorporated the agreement into the final decree. At that time, husband challenged the validity of the agreement. Mr. Batzli stated,

> I'm not prepared to say it's a valid agreement but he certainly doesn't waive any argument that he's got today that he can't put on before the Commissioner . . . . So it may be valid. I don't know that yet. But I'm asking that the Court not include that as a valid contract today if the Court sees fit to enter the final decree and refer the matter to Mr. Ganey.

The trial court ruled as follows:

> THE COURT: I will put in the Order that I rule that the contract was valid but I refused to interpret it because we were here on a pendente lite argument. All of it is stated in the transcript of the hearing. Okay?
>
> [WIFE'S ATTORNEY]: Yes, sir.
>
> [HUSBAND'S ATTORNEY]: Yes, sir.

On December 16, 1998, the trial court entered a final decree. The decree contained the following:

> It appearing that the parties have entered into a valid written agreement dated August of 1996, a copy of which was filed with the Bill of Complaint, it is hereby ORDERED, as provided by § 20-109.1 Va. Code Ann., that the provisions of the agreement are to be interpreted by the Commissioner in Chancery.

-

Husband signed the order and objected "for the reasons noted in the record including, but not confined to the fact that there was no meeting of the minds between the parties and consequently, there can be no valid contract."

HEARINGS BEFORE AND FINDINGS BY THE COMMISSIONER

The February 1999 Hearing and the April 1999 Interim Report

The parties appeared before the commissioner in chancery on January 18, 1999 and February 19, 1999 to interpret the terms of the agreement and determine the amount of spousal support and child support and attorneys' fees. During the February 19 hearing, husband for the first time charged wife with deleting portions of the agreement after they had signed and initialed it. He never raised these allegations by pleading.[1] Specifically, he testified that they signed and initialed everything at their second meeting and that, following that meeting, wife crossed through the statement in subparagraph 4(d) that after one year, the $3,500 figure would be reduced to $2,500. According to husband, he told wife during the third visit that "once she made th[at] change, we didn't have any contract." At the hearing, husband also testified that his understanding of subparagraph 4(d)

---

[1] We note that in husband's answer, he states in paragraph 4 the only basis for voiding the agreement to be "[t]he defendant denies the allegations of paragraph 6 of the Bill of Complaint and affirmatively states that the Agreement was signed during a time when defendant was under severe emotional distress and defendant will request that the alleged agreement be deemed null and void." See Rule 1:4(d) and (g).

-

was that he would be paying no more than $3,500 in combined child and spousal support and no more than $2,500 in combined support after one year.

Wife disagreed with husband and testified they initialed and signed the agreement at the third meeting.

The commissioner filed an interim report on April 15, 1999, in which he found no ambiguity in the agreement.

> A plain reading of paragraphs 4(a) and 4(d) reveals that [husband] is to pay child support pursuant to the guidelines, i.e., $646.00, and an amount of spousal support, when combined with the child support, shall be no less than $3,500.00 a month.
> It is clear that the agreement anticipates possible changes in the child support and obviously anticipates possible changes in spousal support, however, it is your Commissioner's determination and finding that regardless of these changes the total of each element (child support and spousal support) each month is to be <u>no less</u> than $3,500.00.

(Emphasis added.)

The commissioner noted "that much of [husband's] argument [went] to the validity of the contract." Because that issue was not before him, the commissioner explained that he was required to make his "ruling based on the agreement itself." No evidence was presented regarding valuation, "income," "the factors to be considered for spousal support," attorneys fees or costs; so the commissioner directed the parties to schedule a hearing in the future to address those issues.

-

## The September 1999 Hearings

In September 1999, the commissioner conducted two additional hearings. On September 3, 1999, the parties introduced a report from a CPA regarding equitable distribution which the parties agreed would be the basis for the equitable distribution award. On September 24, 1999, wife submitted an affidavit from a local attorney who reviewed the costs and fees and who opined as to their reasonableness.

On November 24, 1999, the commissioner conducted a hearing on husband's motion to reconsider. Husband questioned the reasonableness of certain fees and costs. The commissioner denied husband's motion.

## The Final Report

In April of 2000, the commissioner completed his final report. He noted that the issues in the decree of reference "were addressed and reported" in the April 15, 1999 interim report. After hearing and reviewing the evidence, the commissioner found the fees and costs reasonable and directed husband to pay them.

## THE JULY 6, 2000 TRIAL COURT HEARING

On July 6, 2000, husband and wife appeared before a different circuit court judge. Wife moved the trial court to adopt and confirm the commissioner's report. Husband's attorney argued for an opportunity to litigate and present evidence as to the validity of the agreement, specifically, whether the parties

-

agreed to the interlineations in the agreement, who had possession of the final version of it and whether there were "any interlineations made after the last party initialed it." Wife explained to the trial court that she and husband, through his former attorney, stipulated to the validity of the agreement at the June 10, 1998 pendente lite hearing.

After hearing argument, the parties furnished the trial court with transcripts of the June 10, 1997 pendente lite hearing before Judge Taylor and the February 19, 1999 ore tenus hearing before the commissioner. The trial court took the matter under advisement.

By letter opinion dated July 18, 2000, the trial court ruled that husband was bound by "the concessions made on 10 June 1997." The trial court then confirmed the commissioner's report "to the extent he determined child support and spousal support to be limited to $3500 as the lowest limit."

## II.

Appellate courts in Virginia look "with favor upon the use of stipulations . . . which are designed to narrow the issues and expedite the trial or settlement of litigation." McLaughlin v. Gholson, 210 Va. 498, 500, 171 S.E.2d 816, 817 (1970). The Supreme Court of Virginia has held that a stipulation contemplates "an agreement between counsel respecting business before a court." Burke v. Gale, 193 Va. 130, 137, 67 S.E.2d 917, 920 (1951).

-

Although an attorney at law has no authority to compromise his client's claim without consent, he "has full authority to act on behalf of his client in the conduct of litigation before the court, including making admissions and factual stipulations."  Snyder-Falkinham v. Stockburger, 249 Va. 376, 381-82, 457 S.E.2d 36, 39 (1995).  "Absent a challenge to the authority of an attorney to make them, stipulations are definitive of issues."  Bauer v. Harn, 223 Va. 31, 36, 286 S.E.2d 192, 194 (1982).  "If the stipulation was agreed to there can be no objection to it."  Burke, 193 Va. at 137, 67 S.E.2d at 917.  The court will not accept the stipulation if it is merely a legal argument or was an admission not intended to be conceded.  Gudnason v. Life Ins. Co. of North America, 231 Va. 197, 204, 343 S.E.2d 54, 58-59 (1986).

Credible evidence supports the trial court's finding that husband stipulated to the validity of the agreement.  In the instant case, at the June 10, 1997 hearing, husband's first attorney stated, "I'm here to say that we stipulate to the contract.  We're not arguing that this contract is not valid after talking further with my client . . . . [E]verything has been handled in this separation agreement."  Wife's counsel responded, "Well we've stipulated it and we've agreed the agreement is fine.  It's just a matter of interpreting the agreement."  Later, after wife's attorney alleged that one provision of the agreement had been altered and was not agreed

-

upon by the parties and the judge interpreted the clause consistent with husband's contention, husband's attorney agreed again that they stipulated to the agreement. Husband signed the trial court's order as "Seen and Objected as to amount of support not in accordance with Separation Agreement." At no time during this hearing did husband or his attorney allege that wife had altered the agreement or was this alleged in any pleading. In fact, husband testified each party "made additions to the agreement and scratch-outs and everything but [both] initialed everything in the agreement."

Additionally, by March 1997, husband possessed a copy of the agreement because it was attached to the bill of complaint filed at that time. After having months to review the finalized agreement, husband and his attorney characterized it as valid at the June 1997 hearing. Neither husband nor his attorney ever argued that wife had deleted portions without his knowledge or approval. The record belies any suggestion that the repeated representations made by husband and his attorney were inadvertent statements not intended to bind him or that husband was unaware of the ramifications of his representation, namely, that he was agreeing to the validity of the agreement. Moreover, husband's repeated representations that the agreement was valid constituted husband's acknowledgment that there was a meeting of the minds between himself and his wife. The record

-

clearly supports the trial court's finding that the agreement was valid.

As to husband's additional argument that the evidence proved there was no contract, husband is precluded from making that argument after repeatedly avowing that it was valid. "'No litigant . . . will be permitted to approbate and reprobate--to invite error . . . and then to take advantage of the situation created by his own wrong.'" Manns v. Commonwealth, 13 Va. App. 677, 680, 414 S.E.2d 613, 615 (1992) (quoting Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988)). Husband cannot ascribe error to the trial court's decision that the agreement was valid after he and his attorney made repeated representations as to its validity upon which the trial court relied. See id. at 679, 414 S.E.2d at 615. Additionally, husband never raised by pleading any defense other than duress which he abandoned. See Rule 1:4(d) and (g).

Accordingly, the trial court did not err in relying on the party's representations to find the agreement to be valid, in confirming the commissioner's report and in valuing the parties' property according to their agreement. For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

-