# 𝔖taunton

## JUDGE MULLINS & S. J. MULLINS, PARTNERS, ETC. V. MINGO LIME & LUMBER COMPANY.

September 5, 1940.

Record No. 2231.

Present, All the Justices.

The opinion states the case.

*S. H. & Geo. C. Sutherland,* for the plaintiffs in error.

*H. Claude Pobst* and *Marjorie Coleman,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiffs below, who are now the appellants, filed their notice of motion alleging that they, as agents for the defendant, a West Virginia corporation, had procured certain sales of building materials on which they were entitled

to commissions. The defendant denied any such indebtedness. From a judgment entered on the verdict of the jury in favor of the defendant the present writ of error was granted.

In 1935 the defendant, with its principal place of business at Williamson, West Virginia, established a branch office at Grundy, Virginia, and placed one Wade Crawford in charge. His duties were to sell building materials, make collections, and attend to the running of the Grundy office. Subsequently the company, through its general manager, C. W. Hays, employed one Fred Shortt, whose sole duties were to sell the products of the company and make collections therefor. All bills and invoices were sent out from the Williamson office until July, 1938, when complete bookkeeping facilities were set up at Grundy.

In 1936 and 1937 the plaintiffs bought various materials from the defendant company, and made partial payments on these purchases. Plaintiffs owned and operated a general store, and engaged in several side-lines, such as the sale, on commission, of realty and used automobiles. They testified that Crawford and Shortt requested them to secure purchasers for building materials to be furnished by the defendant company. Plaintiffs indicated that they could secure customers which the defendant company would otherwise be unable to obtain. It is not claimed that any fixed compensation for these services was agreed upon, but plaintiffs testified that Crawford and Shortt said they would "do them right." Subsequently defendant made several sales which plaintiffs assert resulted from their labors, and for which they demand compensation in the form of commissions.

Crawford and Shortt emphatically deny that any contract was made by which plaintiffs were to receive compensation for securing purchasers for defendant's products. Shortt testified that the first he had heard of any such commissions was upon his request to S. J. Mullins, one of the plaintiffs, to pay an instalment due on a note payable to the defendant. Crawford testified that he knew nothing of any

claim to commissions until Shortt reported to him the result of his effort to collect the instalment on the note.

This note was one given in March, 1938, for materials used by plaintiffs in the erection of a new building. Crawford and Shortt had refused to extend this credit to plaintiffs without the approval of Mr. Hays, general manager of the defendant company, and Mr. Hays had approved the sale and accepted the note only after plaintiffs agreed first to settle all existing indebtedness to the defendant.

Mr. Hays testified that he had no knowledge of any agreement for compensation, and that when the note was executed by plaintiffs, and was secured by a deed of trust on S. J. Mullins' house, no mention was made of any sum due the plaintiffs on account of the sales allegedly procured by them, although all of the sales for which plaintiffs claim compensation had occurred well before the execution of the note. He further testified that Crawford and Shortt had been given no authority to make such a contract as plaintiffs claim subsisted.

A great deal was made at the trial, and also in this court, of an agent's actual and apparent authority. Much was said of estoppel, retention of benefits, and other agency problems. We are of opinion, however, that a discussion of these subjects is not necessary to a correct decision of the case. The pivotal question is whether any enforceable contract was made between the plaintiffs and the agents of the defendant. A negative answer to this question completely disposes of the case.

■ A contract is based upon the representations *inter se* of the two contracting parties, and once the nature and extent of these representations has been determined, the question of whether or not a contract was formed is a question of law, and is not within the province of the jury. But where doubt exists as to the character, or, indeed, the presence or lack of representations, the determination of the precise nature and extent of the representations is a question for the jury. And if there is credible evidence before the jury that the alleged promisor made no such representations as

claimed, it is within their province to conclude that no contract was ever formed.

■ One of the instructions to the jury in the instant case was as follows: "The Court instructs the jury that, if you believe from the evidence that Wade Crawford nor Fred Shortt, the agents of the defendant company with whom plaintiffs claim the contract sued on was made, were not authorized by said company to make said contract, then the presumption is that said agents did not make the contract as claimed by the plaintiffs, and, to over-ride said presumption, you must believe by a preponderance of the evidence that said agents exceeded their authority and actually entered into the contract, as claimed by the plaintiffs." Although this instruction may have been slightly confusing because of the agency language employed, it is plain that, when stripped to its essentials, it merely instructs the jury that there is no presumption of a contract, and that the making of the contract, or the representations on which the contract is based, must be established by a preponderance of the evidence.

■ There was ample evidence from which the jury might have found that the dealings of the parties in question were not such as to establish a contract. Crawford and Shortt each testified that neither of them ever asked plaintiffs to procure customers for them or promised to pay anything for such services. No written evidence was given in support of the alleged contract, and no independent witness was introduced who testified to its existence. Neither S. J. Mullins nor Judge Mullins is able to recall the date of the alleged contract, and, while S. J. Mullins testified that Crawford said he would "take care of it," he is unable to recall whether his brother, Judge, or Shortt was present at the time. There is no evidence that any definite compensation was agreed upon.

■■ Even if the jury had believed the facts as testified to by plaintiffs, there is serious doubt whether the whole transaction possesses that certainty which is essential to a contract. In Williston, *Contracts,* section 37, it is said, "It

is a necessary requirement in the nature of things that an agreement in order to be binding must be sufficiently definite to enable a court to give it an exact meaning." And in 12 Am. Jur., at p. 555, we find the following: "For instance, an agreement for service must be certain and definite as to the nature and extent of service to be performed, the place where and the person to whom it is to be rendered, and the compensation to be paid, or it will not be enforced." In 17 C. J. S., Contracts, section 36, pp. 365, 366, there is a statement of like import: "So, where a contract of employment does not specify its duration, the position to be filled, nor the wages, it is void for uncertainty."

Moreover, there was an absence of agreement as to such details as time and place of payment, duration of the contract, bearing of selling expenses, and extent of services to be performed before compensation was due. Both Crawford and Shortt were business men of high standing, and it is not likely that they would enter into any contract so vague and shadowy in outline.

No customer allegedly procured by plaintiffs testified that plaintiffs exhibited any active salesmanship, and each testified that he knew nothing of any compensation to be paid plaintiffs. Plaintiffs made strenuous averments of their efforts in behalf of the defendant company, saying they used their cars to haul customers to the company's place of business, "talking sales talk" the while, yet no customer seems to have considered plaintiffs to be salesmen of the defendant company, or, in fact, to have been aware of any business relationship whatever between plaintiffs and Crawford or Shortt. Plaintiffs' actions, when viewed impartially, were more akin to advice and recommendations than to salesmanship. At least the jury could have so found under the instructions.

Many services rendered by one business man for another are undertaken, not with the expectation of pecuniary compensation, but with the hope of procuring and maintaining a friendly relationship between the two. These services represent an item of goodwill, to be compensated, not with

direct payments, but with reciprocal services in the future, or with more favorable contracts, or with easier credit. Plaintiffs here had been customers of the defendant company, and would likely continue to be, and their efforts in behalf of the company appear to be not so much the consummation of a business contract as an attempt to obtain the high regard of the company and its agents.

The uncertainty of the alleged contract, the omission of significant details usually appearing in a contract, and the lack of any essential element of salesmanship in plaintiffs' actions, coupled with the flat denial of Crawford and Shortt as to any agreement whatever with plaintiffs, are all factors from which the jury might well have concluded that no contract was ever formed. On familiar principles, the jury by their verdict will be presumed to have reached that conclusion.

When it has been established that there was no underlying contract, the agency problems disappear from the case. It will only be said in passing that it is clear that Crawford and Shortt possessed no actual authority to make the alleged contract with plaintiffs, and that the case made out for apparent authority is extremely thin and tenuous.

Since it is clear from the foregoing that no contract existed between the parties, there is no basis here for a recovery on *quantum meruit*. A volunteer who performs services for another without any promise, express or implied, of compensation therefor, cannot recover for those services.

In Williston, *Contracts,* section 22An, we find the following: "And a similar result [no commissions] is reached whenever the plaintiff brings suit because of some benefit bestowed on defendant, without adducing other facts to raise the implication of a promise to pay for such a benefit. * * * *Pittsburgh, etc., Co.* v. *Baker,* 73 Ind. App. 332, 125 N. E. 233; *Western Oil Refining Co.* v. *Underwood,* 83 Ind. App. 488, 149 N. E. 85."

Objection has been made to the action of the court in refusing all of plaintiffs' instructions and giving all those

offered by defendant. The court of its own motion gave an instruction which fairly embraced the plaintiffs' theory of the case. While some of the instructions granted may not be as clear as they should have been, we are unable to say the jury was misled by them or that they were prejudicial to the plaintiffs. Where a fair trial has been had on the merits, and substantial justice has been done, as clearly appears here, section 6331 of the Code prevents interference with the judgment of the lower court for harmless errors.

The judgment is

*Affirmed.*