**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PREMIER SIGNATURES INTERNATIONAL,
INCORPORATED,
Plaintiff-Appellant,

v.

No. 98-2456

FELD ENTERTAINMENT PRODUCTIONS,
INCORPORATED, d/b/a Ringling Bros.
and Barnum & Bailey Circus,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-98-2-A)

Argued: May 6, 1999

Decided: June 25, 1999

Before NIEMEYER, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Warren Hundley, BRIGLIA & HUNDLEY, P.C.,
Fairfax, Virginia, for Appellant. John A.C. Keith, BLANKINGSHIP
& KEITH, P.C., Fairfax, Virginia, for Appellee. **ON BRIEF:** David
J. Gogal, BLANKINGSHIP & KEITH, P.C., Fairfax, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Premier Signatures International, Incorporated, challenges the district court's entry of summary judgment against it in its diversity action for breach of contract against Feld Entertainment, Incorporated. We affirm.

I.

The facts in this case are essentially undisputed. Appellee Feld Entertainment, Incorporated ("Feld"),**1** operates a number of entertainment properties, including the Ringling Bros. and Barnum & Bailey Circus. Beginning around 1985, Feld sought a corporate sponsor to serve as the "title" sponsor for the circus. To that end, Allen Bloom, vice president of Feld, contacted Bud Stanner, senior vice president of International Management Group (IMG). IMG agreed to assist Feld in finding a title sponsor, in return for a commission of approximately 20% on any subsequent sponsorship deal. In the following few years, IMG successfully negotiated successive sponsorship agreements with Ocean Spray and Proctor & Gamble. However, in each case, the sponsors chose not to renew their respective agreements.

After Proctor & Gamble terminated its sponsorship agreement, IMG began looking for another sponsor. Because Feld's agreement with IMG was non-exclusive, Feld also enlisted the assistance of Corporate Entertainment Productions (CEP), a joint venture by Young & Rubicam, an advertising agency, and appellant Premier Signatures International, Incorporated ("Premier"). At approximately the same

_____

**1** The corporate predecessor of Feld Entertainment, Incorporated, was Irvin Feld and Kenneth Feld Productions, Incorporated. For purposes of this opinion, we use the shorthand "Feld" to refer to both companies interchangeably.

2

time, both IMG and CEP told Bloom that they were working on obtaining an agreement from Sears to sponsor the circus.[2] As negotiations between IMG, CEP, and Sears were proceeding, Bloom worked out separate oral agreements with IMG and CEP for each company to split the commission should Sears sign a sponsorship agreement with Feld. Specifically, IMG agreed to take a 12% commission, and CEP agreed to a 7.5% commission. The agreement between Feld and IMG was subsequently memorialized in a letter, which Bloom initialed; the agreement between Feld and CEP was never reduced to writing.

Bloom recalls that, at the time of the negotiations, he told both IMG and CEP that, if Sears signed with Feld and subsequently renewed the sponsorship agreement, "we [Feld] would take care of them [IMG and CEP] on a renewal basis and we would negotiate a renewal fee with them." J.A. at 49 (deposition of Allen Bloom). Eric Weisman, executive vice president of CEP and the individual at CEP with whom Bloom negotiated, similarly recalls the conversation between him and Bloom, saying that Bloom said, "if we [Feld] have a renewal, you [CEP] will get something and I'll determine it at that time." Id. at 108-09 (deposition of Eric Weisman). According to Bloom, it was understood that any renewal commissions would be lower than the original commissions. See id. at 50 (deposition of Bloom). Weisman further recollects that Bloom told him that CEP would be compensated in the same proportion to IMG as it was being compensated for the original sponsorship agreement. See id. at 109-10 (deposition of Weisman).

In November 1994, Sears signed a sponsorship agreement with Feld for $5.2 million. The agreement -- unlike Feld's previous sponsorship agreements with Ocean Spray and Proctor & Gamble -- contained no explicit provision for renewal. In September 1996, Feld, without any assistance either from IMG or from CEP, which had since disbanded, negotiated a renewal of the sponsorship arrangement with Sears for another two years. IMG and Premier, which had suc-

_____

[2] Both IMG and CEP had preexisting relationships with Sears. IMG had performed consulting work for Sears, and Young & Rubicam, one of the two partners behind the CEP joint venture, was Sears' advertising agency.

3

ceeded to CEP's contractual rights as part of the CEP dissolution agreement, then sought commissions from Feld for Sears' renewal, based on their prior conversations with Bloom, who had since left Feld. IMG, with whom Feld had a continuing professional relationship, sought a 12% commission for both years of the renewal, and a similar commission for all future renewals; after some wrangling, Feld agreed to pay IMG a 6% commission for two years, but no further commissions. Feld refused to pay a renewal commission to Premier, with whom it was no longer doing business. Premier then commenced this action against Feld, alleging that Feld's refusal to pay a renewal commission constituted a breach of express and implied contract. Both parties moved for summary judgment; the district court granted summary judgment to Feld and denied it to Premier. Premier now appeals.

II.

On appeal, Premier renews its claims that Feld's refusal to pay a renewal commission constituted a breach of express and implied contract. We address each of these claims in turn.

A.

Appellant first contends that Bloom bound Feld to an express oral contract by promising Weisman that Feld would pay CEP a renewal commission. We disagree.

Whether we accept Bloom's or Weisman's version of what Bloom said to Weisman, it is clear that Bloom told Weisman two things: first, that Feld would pay CEP <u>some</u> renewal commission if Sears decided to renew its sponsorship arrangement, and second, that the <u>amount</u> of that commission would be determined only after Sears so decided. Assuming, without deciding, that any "contract" between Feld and CEP would not be void for lack of consideration -- and in view of the absence of any evidence that CEP promised to perform any services to Feld in return for the renewal commission, we have serious doubts on that score[3]-- we agree with the district court that

_____

[3] Indeed, Bloom's assertion that he told Weisman that "<u>we</u> would take care of them on a renewal basis," and Weisman's assertion that Bloom

the agreement between Bloom and Weisman did not constitute an enforceable contract because it was insufficiently certain as to at least one material term: namely, the amount of the commission. "[A]n agreement for service must be certain and definite as to . . . the compensation to be paid, or it will not be enforced." Mullins v. Mingo Lime & Lumber Co., 176 Va. 44, 50 (1940) (internal quotation omitted); accord Progressive Constr. Co. v. Thumm, 209 Va. 24, 30-31 (1968); Smith v. Farrell, 199 Va. 121, 127-28 (1957); Parker v. Murphy, 152 Va. 173, 183 (1929). In Mullins , the Virginia Supreme Court concluded that a mere assertion that the defendant would "take care of" compensating the plaintiffs, without more, was insufficient to establish an express contract. See id. at 49. Similarly, in this case, we conclude that Bloom's promise to Weisman -- either that Feld would "take care of" CEP, or that CEP would"get something," depending on whose version of the conversation we accept -- is insufficient, standing on its own, to establish an express contract.

Appellant additionally contends that, although the amount of the commission was not specifically fixed, it was made sufficiently certain by virtue of Bloom's alleged promise to Weisman that CEP would be compensated in the same proportion to IMG as it was being compensated for the original sponsorship agreement. In the absence of a term explicitly establishing the amount of compensation, a contract must contain a sufficiently specific "method or formula . . . for determining the amount payable" or be voided for uncertainty. Allen v. Aetna Cas. and Surety Co., 222 Va. 361, 364 (1981). In this case, even if Bloom did promise that CEP would be compensated in the same proportion to IMG, the amount of compensation would still be insufficiently certain because there is no evidence that Bloom and Weisman discussed the percentage compensation that either CEP or IMG would receive from a renewal by Sears. To the contrary, Bloom explicitly told both CEP and IMG that the size of their renewal commissions would not even be negotiated until after Sears decided

_____

told him that "you will get something and I 'll determine it at that time," both suggest that any renewal commission would be given by Feld not in return for any services rendered, but almost as a gratuity, above and beyond the contractual compensation provided in the form of the original commission, for CEP's assistance in securing the original contract.

5

whether to renew its sponsorship agreement.**4** Because the amount on which the amount of compensation to CEP depended-- namely, the amount of compensation to IMG -- was thus itself sufficiently indeterminate, we conclude that any contract between Feld and CEP was void for uncertainty as to the material term of compensation.**5**

B.

Appellant next contends that Feld was bound by an implied oral contract to pay CEP a renewal commission. Again, we disagree.

In order to obtain quantum meruit damages for breach of an implied contract, a plaintiff must show that it performed some service on the defendant's behalf for which it was entitled to compensation. See, e.g., Hendrickson v. Meredith, 161 Va. 193, 203 (1933). In this case, as the district court noted, see J.A. at 299, appellant introduces no evidence that CEP performed any service for Feld in connection with Sears' renewal of the sponsorship arrangement with Feld: indeed, CEP had disbanded by the time of Sears' renewal, and appellant -- unlike Young & Rubicam, the other partner behind the CEP joint venture -- had no special access to Sears that would have enabled it to assist Feld in securing a renewal. We therefore reject appellant's implied-contract claim.

_____

**4** Such statements did not actually bind Feld to conduct such negotiations, because it is well-established in Virginia that a mere agreement to negotiate at some point in the future is not enforceable. See, e.g., Allen, 222 Va. at 363-64; Kay v. Professional Realty Corp., 222 Va. 348, 351 (1981).

**5** The fact that Feld eventually paid what is arguably a "commission" to IMG is irrelevant, because the only question before us is whether the contract between Feld and CEP was sufficiently certain at the time at which it was agreed: as the district court noted, subsequent, extrinsic events cannot render an uncertain contract certain. In any event, Feld's subsequent payment to IMG was not strictly speaking a "commission," but rather a settlement of IMG's similarly disputed claim to a commission.

CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED

7