# CIRCUIT COURT OF THE CITY OF HOPEWELL

R. M. Harrison
Mechanical Corp.

v.

Decker Industries, Inc.,
and James River
Cogeneration Co.

August 28, 2008

Case No. CL08-193

BY JUDGE W. ALLAN SHARRETT

This memorandum opinion is in response to the complaint filed by R. M. Harrison Mechanical Corporation ("R. M. Harrison") and the subsequent demurrer filed by James River Cogeneration Company ("JRCC").

For the reasons that follow, the Court sustains the demurrer, with leave to amend.

## I. *Summary of the Facts*

This is a dispute arising out of the construction of a coal-burning cogeneration facility in Hopewell, Virginia. JRCC, lessee of the premises, hired Decker Industries, Inc. ("Decker") to serve as the general contractor on the project. Decker, in turn, subcontracted with R. M. Harrison to perform millwright and steel fabrication services required on the project. On June 12, 2007, Decker and R. M. Harrison entered into a contract to complete work on a

timely and material basis. R. M. Harrison subsequently began work on the project sometime in June 2007 and performed all work required of it under the contract. R. M. Harrison sent several invoices to Decker and made repeated demands for payment, totaling $24,850.96. Decker failed to pay. As a result, R. M. Harrison filed a complaint against (1) Decker for breach of contract, and (2) JRCC for quantum meruit/unjust enrichment. The relief requested is the same in both claims: judgment for $24,850.96. R. M. Harrison has obtained a default judgment against Decker, and JRCC filed the demurrer considered here.

## II. *Questions Presented*

(1) Based on the facts pleaded, is there a valid claim for unjust enrichment/quantum meruit relief by plaintiff R. M. Harrison against JRCC, irrespective of any other issues such as adequate remedy at law and preexisting default judgment?

(2) Is the lack of contractual privity between R. M. Harrison and JRCC outcome determinative? In addition, does the express contract between R. M. Harrison and Decker have any bearing on the relationship between R. M. Harrison and JRCC?

(3) Does R. M. Harrison's failure to perfect a mechanic's lien preclude it from pursuing an unjust enrichment claim against JRCC? Is R. M. Harrison's equitable claim barred due to some other adequate legal remedy?

(4) Does R. M. Harrison's default judgment against Decker have any impact on R. M. Harrison's availability of recovery from JRCC?

## · III. *Short Answers*

(1) There is not a valid claim for unjust enrichment/quantum meruit relief based on the facts pleaded because the circumstances do not give rise to a reasonable belief by R. M. Harrison that JRCC would ensure R. M. Harrison's compensation.

(2) Lack of contractual privity is not outcome determinative. Privity of contract is not necessary among a subcontractor-plaintiff and owner-defendant, provided that all elements of an unjust enrichment claim are met. Further, an express contract between R. M. Harrison and Decker has no bearing on the relationship between R. M. Harrison and JRCC.

(3) R. M. Harrison's failure to perfect a mechanic's lien does not preclude it from pursuing an unjust enrichment claim against JRCC. The demurrer stage is too early to address such factual considerations as whether an adequate remedy at law existed between the parties.

(4) R. M. Harrison's default judgment against Decker does not have any impact on R. M. Harrison's ability to recover from JRCC, due to the provision for joint liability under the Code of Virginia.

IV. *Discussion*

"[T]he function of a demurrer is to test only whether the challenged pleading states a cause of action upon which relief can be granted if all the allegations are admitted as true." *Faulknier v. Shafer*, 264 Va. 210, 214, 563 S.E.2d 755, 758 (2002).

> A demurrer tests only the legal sufficiency of the claims stated in the pleading challenged. While a demurrer does not admit the correctness of the pleading's conclusions of law, it "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred." Thus, the sole question to be decided by the trial court is whether the facts thus pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant.

*Thompson v. Skate America*, 261 Va. 121, 128, 540 S.E.2d 123, 126-27 (2001).

(1) *Validity of the Unjust Enrichment Claim Based on the Facts Pleaded, Irrespective of Other Issues*

> Ordinarily, when one person renders services for another which are requested and accepted by him, the law creates an obligation, called an implied-in-law contract, on his part to pay a reasonable compensation, unless something in the relationship of the parties indicates otherwise. *Burke v. Gale*, 193 Va. 130, 67 S.E.2d 917, 919 (1951). The crux of a quantum meruit cause of action lies in the unjust enrichment of one party. *Kern v. Freed Co.*, 224 Va. 678, 299 S.E.2d 363, 363-64 (1983). Merely rendering services alone does not create a contract implied-in-law, nor is such a contract implied when one officiously confers benefits upon another. *Weitzel v. Brown-Neil Corp.*, 152 F. Supp. 540, 549 (N.D. W. Va. 1957); *United States v. Lias*, 154 F. Supp. 955, 958 (N.D. W. Va. 1957). Further, even though the defendant

may have benefitted from the plaintiff's services, the latter cannot recover unless he can show sufficient additional facts that imply a promise to pay. *Mullins v. Mingo Lime Co.*, 176 Va. 44, 10 S.E.2d 492, 494-95 (1940).

*Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391, 397 (E.D. Va. 1984), *quoted in Shen Valley Masonry, Inc. v. S. P. Cahill & Associates, Inc.*, 52 Va. Cir. 484, 485 (City of Charlottesville, 2000).

"The law will imply a promise to pay for goods received. However, this implied or quasi-contract is based on equitable principles. It rests 'upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another'." *Kern v. Freed Co.*, 224 Va. 680, 299 S.E.2d 363, 364-65 (1983) (citations omitted). "The quasi-contract is a plaintiff's remedy at law when the facts establish that a defendant has been unjustly enriched at the expense of the plaintiff, but where the facts fail to establish that the parties established any form of agreement." *Nossen v. Hoy*, 750 F. Supp. 740, 744 (E.D. Va. 1990); *see also Hitachi Sys. Corp. v. webMethods, Inc.*, 60 Va. Cir. 79, 86 (Fairfax County, 2002).

To establish a claim of unjust enrichment or quantum meruit, a claimant must satisfy three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant *in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value*." *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006) (emphasis added).

The first two elements do not appear to be in dispute here. It seems clear that JRCC received the benefit of R. M. Harrison's work and that JRCC knew the benefit would be conferred upon it.

The third element has given rise to the most litigation. The following has become the test for satisfaction of the third element: "The primary inquiry is 'whether or not any circumstances had been shown which would reasonably have led the subcontractor to believe that anyone other than the general contractor . . . and in particular, that the landowner would pay him for his labor and materials'." *Sherwin Williams Co. v. Buckingham Associates*, 20 Va. Cir. 83, 84 (Chesterfield County, 1990) (citing Annotation, Building and Construction Contracts: Right of Subcontractor Who Has Dealt Only with Primary Contractor to Recover against Property Owner in Quasi-Contract, 62 A.L.R. 3d 288, 294 (1975) (also cited in *Shen Valley Masonry, Inc. v. S. P. Cahill & Associates, Inc.*, 52 Va. Cir. 484, 486 (City of Charlottesville, 2000))).

There is support for this A.L.R. concept from the Supreme Court of Virginia. A plaintiff who brings suit because of some benefit bestowed on defendant, without adducing other facts to raise the implication of a promise to pay for such a benefit, has no basis for recovery based on quantum meruit. *Mullins v. Mingo Lime & Lumber Co.*, 176 Va. 44, 51, 10 S.E.2d 492, 495 (1940). The circumstances of the acceptance or retention of the benefit must render it inequitable for the defendant not to compensate the plaintiff. "The liability to pay for the services is based on an implication of law that arises from the facts and circumstances presented, independent of agreement or presumed intention." *Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 255 Va. 108, 114-15, 495 S.E.2d 478, 482 (1998) (citations omitted).

Three cases are most applicable with regard to sustaining or overruling a demurrer based on satisfactory pleading of the third element. In *E. E. Lyons Constr. Co. v. TRM Dev. Corp. and Sizzler Restaurants Int'l, Inc.*, 25 Va. Cir. 352 (Fairfax County, 1991), SRI, the owner, contracted with TRM, the general contractor, to build a Sizzler restaurant. TRM then entered into a subcontract with E. E. Lyons. E. E. Lyons claimed it was never paid and brought suit against SRI under quantum meruit. To the *E. E. Lyons* court, the determinative factor in deciding whether to sustain SRI's demurrer was whether SRI as the owner had paid the general contractor for the services and materials provided, as the general contractor was the one in contractual privity with E. E. Lyons. *Id.* at 354.

> If the owner has paid the general contractor, it is generally concluded that it would not be inequitable for the owner to retain the benefit of the services and materials for which he has paid. If the owner has not paid the general contractor, the Court's primary inquiry is whether any circumstances have been shown which would reasonably lead the subcontractor to believe that the landowner would pay him for his labor and materials. If such circumstances are shown, a promise on behalf of the owner to pay for the labor and materials provided by the subcontractor is generally implied.

*Id.* at 354-55.

E. E. Lyons alleged in its complaint that SRI, the owner, remained indebted to the general contractor and that SRI agreed to issue joint checks to the plaintiff-subcontractor and the general contractor. Thus, the court held that the facts alleged in the complaint "set forth circumstances from which the

subcontractor could reasonably have believed that the owner would pay him for his labor and materials." *Id.* at 355. Thus, the third element was met and the demurrer was overruled.

In *Sherwin Williams Co. v. Buckingham Associates*, 20 Va. Cir. 83 (Chesterfield County, 1990), the court was rather lenient in deciding that the facts and circumstances pleaded by the plaintiff-subcontractor were sufficient to meet the third element. Only a tenuous relationship between the parties was pleaded in the complaint:

> Buckingham Associates, through its contract with George W. Kane, Inc., and George W. Kane, Inc., through its subcontract with M. S. SABRA, and M.S. SABRA, through its purchase orders with Sherwin Williams, requested that Sherwin Williams furnish certain paint and associated products for incorporation into the Property, with the understanding that Sherwin Williams expected payment for this material. The paint and associated products supplied by Sherwin Williams to the Property enhanced its value, thereby resulting in substantial benefit to each of the defendants for which they have not paid Sherwin Williams.

*Id.* at 83-84.

Based on these facts as pleaded, the court overruled the demurrer, holding that "[t]he complaint sufficiently alleges a claim for quantum meruit. Inferences drawn from the alleged relationship among defendants adequately support an 'implied promise to pay'." *Id.* at 85.

Lastly, in *Shen Valley Masonry, Inc. v. S. P. Cahill & Associates, Inc.*, 52 Va. Cir. 484, 486 (City of Charlottesville, 2000), Shen Valley, as the subcontractor, sued the University of Virginia (UVA) as the owner on a claim of unjust enrichment arising out of masonry services for a student residence construction project. Cahill was the general contractor. UVA was not a party to the subcontract between Cahill and Shen Valley, and the contract between UVA and Shen Valley made it clear that UVA only contracted with Cahill. The contract between the owner and the general contractor (*i.e.* UVA and Cahill) contained express language stating that nothing in the contract documents shall create any contractual ownership between UVA and any subcontractor, nor shall it create any obligation on UVA's part to pay for or to see to the payment of any money due to any subcontractor. *Id.* at 485-86. Shen Valley admitted that the contract between Cahill and UVA was incorporated by reference into the subcontract between Shen Valley and Cahill. *Id.* at 486. As a result, the court, in sustaining UVA's demurrer, concluded that "in no

way could the terms of Cahill's contract with UVA nor the terms of Cahill's contract with Shen Valley reasonably have led Shen Valley to believe that anyone other than Cahill, and in particular that UVA, would pay them for labor or materials." *Id.*

In the instant case, the third element has not been satisfied. Even if all facts pleaded in R. M. Harrison's complaint are assumed to be true, the facts are insufficient to support a claim of unjust enrichment. The circumstances as pleaded do not show that R. M. Harrison could reasonably have been led to believe that anyone other than Decker as the general contractor, and in particular that JRCC, would pay it for its labor and materials. *Shen Valley* is inapplicable, as no mention was made in the complaint of the terms of any contract between R. M. Harrison and Decker or Decker and JRCC regarding JRCC's responsibility for ensuring that R. M. Harrison was paid for its services. Unlike in *E. E. Lyons*, R. M. Harrison has pleaded no facts regarding whether JRCC has paid Decker. The *Sherwin Williams* court set a relatively low hurdle for R. M. Harrison to clear to be able to withstand a demurrer; however, the facts as pleaded by R. M. Harrison in its complaint are even less sufficient than those in the *Sherwin Williams* complaint.

R. M. Harrison's complaint states the following facts applicable to the circumstances of the work done and the relationship between R. M. Harrison, Decker, and JRCC:

> 5. JRCC hired Decker to serve as the general contractor on the Project.
>
> 6. Decker, in turn, hired R. M. Harrison to perform millwright and steel fabrication services required on the Portsmouth [sic] Project.
>
> 7. Decker and R. M. Harrison entered into a Contract dated June 12, 2007, through one Purchase Order . . . to complete work on a time and material basis ("R. M. Harrison/Decker Contract").
>
> 8. R. M. Harrison began work under the R. M. Harrison/Decker Contract on the Hopewell Project in or around June, 2007.
>
> 9. R. M. Harrison performed all work as required by contract with Decker and requested payment for its work from Decker. . . .
>
> 16. R. M. Harrison furnished Decker labor and materials pursuant to its specific instance and request, said labor and materials have been accepted by Decker, and R. M. Harrison has invoiced Decker in the total amount [of] $24,850.96. . . .

20. Additionally and alternatively, JRCC has received a benefit for which it has paid no consideration. Upon information and belief, JRCC had knowledge of and/or appreciated the benefits conferred upon it and its property by R. M. Harrison and other services provided by R. M. Harrison *at defendants' request* [emphasis added], which was incorporated into the Hopewell Property. JRCC has been unjustly enriched, and R. M. Harrison is entitled to be paid by JRCC for the value of its labor, materials, and other services.

The facts pleaded in the complaint, when assumed to be true, show that an express subcontract existed between R. M. Harrison and Decker; however, no contract existed between R. M. Harrison and JRCC. R. M. Harrison performed work as required in its contract with Decker. Decker accepted the labor and materials. The only fact alleged in the complaint which may give rise to a reasonable belief by R. M. Harrison that JRCC would be responsible for payment is in ¶ 20: JRCC had knowledge of and/or appreciated the benefits conferred upon the property by R. M. Harrison and other services provided by R. M. Harrison at *defendants'* request. The possessive plural of defendant is the only aspect that might show that JRCC specifically requested some work and/or materials of R. M. Harrison. Because insufficient circumstances have been shown which reasonably would have led R. M. Harrison to believe that anyone other than Decker, and in particular JRCC, would pay it for its labor and materials, the claim for unjust enrichment fails.

Therefore, the demurrer is sustained with leave to amend.

Because R. M. Harrison may indeed amend its complaint, the court addresses below the other questions presented in the parties' pleadings.

## (2) *Lack of Contractual Privity; Existence of an Express Contract*

Privity of contract is not a requirement in a claim for unjust enrichment by a subcontractor against the owner; thus, R. M. Harrison's claim against JRCC cannot be barred for that reason alone. "Virginia law appears to follow the majority approach and will allow recovery on a quantum meruit claim by a subcontractor against an owner with whom he lacks contractual privity provided the essential elements of quasi-contract are established." *E. E. Lyons Constr. Co. v. TRM Dev. Corp.*, 25 Va. Cir. 352, 354 (Fairfax County, 1991) (citations omitted). "The lack of privity of contract between the provider of services and materials to real property and the owner of the real property is not a defense if the essential elements of an unjust enrichment claim are proven."

*Sargis & Jones, Ltd. v. Moran Associates, Limited Partnership*, 27 Va. Cir. 57, 61 (Loudoun County, 1992); *see also Sherwin Williams Co. v. Buckingham Associates*, 20 Va. Cir. 83, 84 (Chesterfield County, 1990).

In fact, if an express contract did exist between the subcontractor and the owner, unjust enrichment would not be a valid cause of action, because the existing contract would control the parties' relations. "An express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter." *Southern Biscuit v. Lloyd*, 174 Va. 299, 311, 6 S.E.2d 601, 606 (1940), *cited in Hitachi Sys. Corp. v. webMethods, Inc.*, 60 Va. Cir. 79, 86 (Fairfax County, 2002). *Southern Biscuit* dealt with express contracts between the plaintiff and defendant in the case and did not address whether an implied contract can be imposed on one who was not a party to the express contract. *Elegant Homes of Va., Inc. v. Boberski*, 70 Va. Cir. 377, 378 (City of Charlottesville, 2006). Later in 2006, the Eastern District of Virginia also shed light on the issue of express contracts: "Virginia law provides no relief under a quantum meruit theory where a valid, express contract exists *between the parties*." *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006) (emphasis added); *see also United Leasing Corp. v. Resource Bank*, 58 Va. Cir. 96, 103 (City of Richmond, 2002). Thus, it appears that an express contract between *other* parties involved in the project has no bearing on the instant parties to a case who did not have an express contract.

The converse must also be true; that is, where there is no express contract between the parties to a quantum meruit claim, Virginia law does provide relief under a quantum meruit theory, provided the elements of such a claim are otherwise satisfied. "It is only in the absence of an express or of an enforceable contract between parties, that the law (whether at law or in equity) will, from circumstances, imply a contract between them." *Ellis & Meyers Lumber Co. v. Hubbard*, 123 Va. 481, 502, 96 S.E. 754, 760 (1918). Therefore, if R. M. Harrison meets the test for an unjust enrichment claim, its lack of contractual privity with JRCC has no bearing and may give rise to such equitable relief.

(3) *Failure to Perfect a Mechanic's Lien; Existence of Other Adequate Remedies at Law*

For a claim of unjust enrichment to stand, the plaintiff must have no adequate remedy at law against the demurring defendant. "The 'unjust' in 'unjust enrichment' refers to the lack of the plaintiff having an adequate remedy at law for any wrong *perpetrated on him by the defendant*." *Elegant*

*Homes*, 70 Va. Cir. at 378 (quoting *Wright v. Cangiano*, 20 Cir. C15084 (Loudoun County, 1993)) (emphasis in original). If Decker was the party responsible for paying R. M. Harrison, then JRCC did not perpetrate any wrong on R. M. Harrison. The facts as pleaded are unclear and inadequate.

"At the demurrer stage, it is too early to determine whether there is an adequate remedy at law. . . . Factual matters that may bear on whether there is an adequate remedy at law are to be determined after the demurrer stage." *Id.* (citing *Faulknier v. Shafer*, 264 Va. 210, 216-17, 563 S.E.2d 755, 759 (2002)).

In *Connemara Corp. v. St. Andrews, L.L.C.*, 72 Va. Cir. 289 (Lancaster County, 2006), the court sustained a demurrer to a claim of unjust enrichment because Connemara had slept on its rights by failing to perfect a mechanic's lien. St. Andrews, as owner, contracted with Connemara, as general contractor, to do certain construction work on land purchased by St. Andrews on a secured line of credit from the Bank of Northumberland. Connemara filed a mechanic's lien against the property for its work but failed to perfect it. Subsequently, Connemara sued the Bank on a theory of unjust enrichment for the work it had done on the property on which the Bank had since foreclosed, and the Bank demurred. Without a perfected mechanic's lien against St. Andrews, the owner, Connemara had no security interest in the property. The Bank, however, had a valid security interest. The court stated that if it were to permit the case to go forward, *i.e.* overrule the Bank's demurrer, it effectively would be allowing a party "who has slept on his rights at law to proceed in equity against another party who has been diligent." *Id.* at 290. Thus, the demurrer was sustained. *Connemara* is distinguishable from the instant case in that *Connemara* was about security interests and priority of lienholders and the Bank did not appreciate any actual benefit from the construction work done by Connemara. Thus, while *Connemara* may appear to have been decided based on the plaintiff's adequate remedy at law which it let slip by, it is actually a different situation altogether.

### (4) *Effect of Plaintiff's Default Judgment Against Decker*

R. M. Harrison's default judgment against Decker does not have any impact on R. M. Harrison's ability to recover from JRCC, due to the provision for joint liability under the Code of Virginia:

> A judgment against one of several joint wrongdoers shall not bar the prosecution of an action against any or all the others, but the injured party may bring separate actions against the wrongdoers

and proceed to judgment in each. . . . [N]o bar shall arise as to any of them by reason of a judgment against another, or others, until the judgment has been satisfied.

Va. Code Ann. § 8.01-443 (1950).

An injured party may bring separate suits against wrongdoers and proceed to judgment in each, and no bar arises as to any of them *until satisfaction is received. Fitzgerald v. Campbell*, 131 Va. 486, 490, 109 S.E. 308, 309 (1921). However, the plaintiff can only enforce one satisfaction for the same injury, and therefore must elect against which of the several wrongdoers he will proceed to execution of the judgment for satisfaction of his damages. *Id.* In applying the Code section above, the Circuit Court of Albemarle County stated that "in actions against joint contractual obligors as well as in actions against joint tortfeasors, judgments against different defendants may be entered at different times." *Hodges v. Perry*, 43 Va. Cir. 340, 344 (Albemarle County, 1997).

In the instant case, R. M. Harrison has suffered only one injury: it has not been paid for the labor and materials it provided. It is alleged that Decker and JRCC both may be to blame. As such, they should be treated as joint wrongdoers. Thus, under the Code and case law, R. M. Harrison as the injured party may bring separate suits against Decker and JRCC and proceed to judgment in each. Until R. M. Harrison seeks to enforce its judgment against Decker, it is free to pursue a judgment against JRCC.

## V. *Conclusion*

Based on the facts pleaded in the complaint, R. M. Harrison does not have a valid claim for unjust enrichment/quantum meruit relief. The circumstances alleged do not give rise to a reasonable belief by R. M. Harrison that JRCC would see to its compensation. Thus, the demurrer is sustained, with leave to amend. The other questions presented through the pleadings were addressed in anticipation of R. M. Harrison taking advantage of the leave to amend granted herein.

The fact that JRCC and R. M. Harrison are not in privity of contract has no bearing; likewise, neither does the fact that an express contract existed between Decker and JRCC or Decker and R. M. Harrison.

In addition, R. M. Harrison's failure to perfect a mechanic's lien does not preclude it from pursuing an unjust enrichment claim against JRCC. The demurrer stage is too early to address such factual considerations as whether an adequate remedy at law existed between the parties.

Lastly, R. M. Harrison's default judgment against Decker does not have any impact on R. M. Harrison's ability to recover from JRCC, due to the provision for joint liability under the Virginia Code. JRCC and Decker are allegedly joint wrongdoers, both contributing to the single injury to R. M. Harrison, that is, that it has not been paid for labor and materials provided.

The demurrer is sustained with leave to amend. It is so ordered. Endorsement of the order by counsel is waived pursuant to Rule 1:13.