## CIRCUIT COURT OF LOUDOUN COUNTY

In re Presidential
Golf Course Claims

September 8, 2010

Case No. (Civil) 59604

By Judge Burke F. McCahill

This case was heard on August 17, 2010. Reference is made to the January 7, 2010, order of consolidation for the cases affected by this ruling. The cases were consolidated pursuant to the Virginia Multi-Claimant Litigation Act § 8.01-267.1 *et seq.* The order itself identifies the parties. The individual plaintiffs are referred to as "claimants." The claimants are contractors, subcontractors, and vendors who claim to have provided goods and services for the construction of the Presidential Golf Club. The claimants have brought suit to enforce mechanics' liens on two separate parcels of property referred as the "Dulles 28 property" and the "Beaumeade property." For convenience, the property is referred to as the Beaumeade Dulles property. When these claims were filed there were two owners, Dulles 28 Associates, L.L.P., and Beaumeade Associates, L.L.L.P. Subsequently another entity, Beaumeade Dulles 28 Golf Associates, L.L.C., acquired an interest in the properties. They have been added as defendants to the consolidated cases only for the claims relating to enforcement of mechanics' liens against the property. Also, a new entity, 1757 Golf Club, is now leasing the premises and appears as a defendant in some cases.

Under the January 7, 2010, order, the first three entities described above as owners of the parcels are referred to as the "primary defendants." I am hearing the mechanics' lien theories against these primary defendants. The demurrers filed are deemed the demurrers of all of the primary defendants on the mechanics' lien theories. The claimants have offered different theories of recovery against the two owners of record when the claims were filed. With the addition of the new defendant(s), they were required to file

amended complaints against the new defendant(s) setting forth additional facts and theories of recovery against the new defendant(s).

There are a number of common interest issues raised in the demurrers. In addition there are some case specific issues raised in the demurrers. There are some consolidated common interest issues that have been briefed and some case specific issues that have been briefed. Although there are differences among the complaints filed, generally, the claims are based on the following.

### Mechanics' Liens against the Fee

The defendants have maintained that the claimants had contracts or subcontracts with Presidential, the former tenant of the owners/landlords Dulles 28 and Beaumeade Associates. They claim that the work was performed during the tenancy at the request of this tenant, who is now bankrupt. Section 43-20 provides in part:

> Subject to the provisions of § 43-3, if the person who shall cause a building or structure to be erected or repaired owns less than a fee simple estate in the land, then only his interest therein shall be subject to liens created under this chapter.

(Emphasis added.)

The defendants argue that, given the above language, the claimant's lien rights are limited to the tenant's rights. Presidential was only a tenant and not a fee owner. In this case, the tenancy ended when the tenant defaulted under the lease; so the claimant's lien rights have also ended according to the defendants.

The claimants have alleged that, under § 43-20, the defendants, owners-landlords, in fact, "caused" these buildings and structures to be erected. There are various allegations made in support, of this aspect of the claim. Some claims are more detailed with respect to the terms of the lease and the level of defendants' participation and control in the contracting process and the knowledge by the landlord of the tenant's financial circumstances when work was being performed. In at least one case, a claimant advances a slightly different theory. Under § 43-3:

> when the claim is for *repairs or improvements to existing structures* only, no lien shall attach to the property repaired or improved unless such repairs or improvements were *ordered or authorized* by the owner or his agent.

(Emphasis added.)

This theory of recovery is founded on a claim for repairs or improvement to existing structures and involves an inquiry regarding whether these are

repairs or improvements to existing structures and whether the defendants "ordered or authorized" the repairs or improvements.

The claimants have also advanced a theory that Presidential, the tenant, was acting as the agent of the defendants as landlords in ordering this work. Therefore, under this theory the contracts would in fact be with the defendants as principals.

I have carefully reviewed the case of *Atlas Portland Cement Co. v. Main Line Realty*, 112 Va. 7, 70 S.E. 536 (1911). That case was decided on the evidence and not on a demurrer. There, the Richmond Company leased a lot to Main Line for twenty years. The case provided that Main Line, the tenant, was to erect a building on the lot. The tenant made a contract with a general contractor, and mechanics' liens were filed. The property reverted to the landlord when the tenant did not perform. At issue was the validity of the liens against the landlord's interest. The case was decided under a former version of § 43-20, but there were similar issues as in this case.

The focus was the language in the statute regarding whether the landlord "caused" the building to be erected. The claimants also had advanced an agency theory. The Supreme Court found the evidence insufficient to find the landlord "caused" the building to be erected based on the facts of the case. The Court made specific factual findings. The defendants rely on the language in the opinion of *Cornell v. Barney*, 94 N.Y. 394, cited by the Supreme Court. Although cited, it is clear that the decision of the Supreme Court was made based on the conclusion that the landlord had not caused the work to be performed based on the facts of the case. In addition, they found the evidence insufficient to show agency. The Supreme Court pointed out that the landlord-tenant relationship alone does not make the tenant the agent of the landlord. It would appear that the claimants in that case relied upon the lease provision that required the tenant to erect a building as support for the claims that the landlord "caused" the building to be erected. This was deemed insufficient because of the distinction that has to be observed between the landlord tenant relationship and the principal agent relationship. *T & M Elec. Inc. v. Prologis Trust*, 70 Va. Cir. 403 (2006), which involved similar issues was also decided on the facts.

I believe that these issues as outlined above should be decided after the claimants have had an opportunity to develop facts in this case. There is no case that definitively decides when the threshold is met to find that a defendant "caused" work to be performed. Each case should be decided based on the facts. As stated in *Feuchtenberger v. Williamson*, 137 Va. 578, 120 S.E. 257, 260 (1923), "the owner of land may by his conduct estop himself from denying that a building contractor has such a lien thereon. For the determination of this question, it is necessary to refer to the evidence." To that extent, the demurrer is overruled. There is a separate issue with respect to the sufficiency of the allegations that the defendants "caused" the work or that Presidential was the "agent" of the defendants. These will be resolved on a case by case basis. Rule 1:4 requires that the facts be alleged.

## Mechanics' Lien against the Structures

There is an additional theory of recovery advanced that only involves a lien against the structures. Here the claimants rely upon the fact that the lien attached to the "building or structure, and so much land therewith as shall be necessary for the convenient use and enjoyment thereof. . . ." under § 43-3. The claimants argue that, under § 43-3, the law contemplates the lien on the structure and the land. The tenant owned the structure under the lease; so, when the lease ended after the lien attached, the landlord took the structure subject to the lien. In recognition of the limitations imposed in § 43-3 by the reference to § 43-20 and the fact that Presidential was only a tenant, the claimants maintain that, notwithstanding the lease having been terminated, the lien should follow the structure after termination of the lease. They have cited a series of cases from other states such as Maryland, Arizona, and California that have allowed the lien to follow the structure alone when a lease ended. The defendants maintain that this issue was decided in *Atlas Portland Cement*. I do not believe that this issue was before the Supreme Court in that case. Therefore, it would appear that this issue is one of first impression in Virginia.

Clearly, statutes relating to the existence and perfection of a mechanics' lien are strictly construed. *Rosser v. Cole*, 237 Va. 572, 576, 379 S.E.2d 323 (1989). However, provisions with respect to enforcement should be liberally construed. *Francis v. Hotel Rueger*, 125 Va. 106, 121, 99 S.E. 690 (1919). While this may be primarily a matter of law, the parties should be able to develop the facts surrounding these transactions fully before this issue is decided, especially when it represents a matter of first impression. This case also involves a lease provision where the tenant actually owns the structures that are constructed during the lease.

In a situation where a lien is filed properly against a leasehold issue, the issue of whether the lien is eliminated when the tenancy ends seems to relate to the continued existence of the lien under § 43-20 and therefore is a matter for strict construction. As noted in *Feuchtenberger v. Williamson*, 137 Va. 578, 120 S.E. 257, 259 (1923), "the lien and the jurisdiction of the court depend upon the statute, and not upon equitable or ethical rules. . . ." However, it may also involve matters of law separate from the mechanics' lien statutes.

## Unjust Enrichment; Quantum Meruit

The claimants have offered alternative theories of recovery apart from the claim based on mechanics' liens. Some have sought to recover on a claim or unjust enrichment or *quantum meruit* or both.

Even though there appears to be many references to "unjust enrichment" and "*quantum meruit*" in Virginia's case law, no case has attempted to

analyze the distinctions between the two concepts. *Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990), does discuss the distinction between implied in fact contracts and implied in law contracts or quasi contracts. Many other courts and commentators have discussed the distinctions, and it is clear that confusion abounds.

The Restatement 2d of Contracts, § 4, states that a contract may be express or implied. The distinction is not in the legal effect but lies in the mode of manifesting assent. So for example, assent can be based on words or conduct or the course of dealing between the parties. Quasi contracts are often called implied contracts or contracts implied in law. But they are not true contracts. They are obligations created by law for "reasons of justice." In the comment to the Restatement § 4, it is observed that the confusion often arises from the term "implied in fact" contracts. These are actual but non-verbal contracts inferred from facts such as conduct. A quasi contract, implied in law is not a contract but a form of the remedy of restitution unlike an express or implied in fact contract where one may look to the words or conduct for a manifestation of assent. A quasi contract is not a contract. It is imposed by law to bring about justice irrespective of the intent of the parties. It is an equitable claim for restitution to prevent another from being unjustly enriched at the expense of another. *Corbin on Contracts*, § 1.20, explains in detail the distinction between a contract and quasi contract. According to *Corbin*, "Unjust Enrichment is occasionally used as a synonym for restitution; one sometimes hears of a 'law of unjust enrichment.' Its primary use, however, should be to state an ultimate fact: because X was unjustly enriched, X must make restitution." *Id.*

It is clear that many courts have struggled with the terms unjust enrichment, *quantum meruit*, quasi contract, and implied contract. *Cantell v. Hill Holliday Connors Cosmopulos, Inc.*, 55 Mass. App. 550, 772 N.E.2d 1078 (2002); *Doug Hambel's Plumbing, Inc. v. Conway*, 831 So. 2d 704 (2002). They have often been used interchangeably. Several courts such as the court in *Nossen, supra*, have tried to clarify the distinctions. See *Paffhausen v. Balano*, 1998 Me. 47, 708 A.2d 269 (1968); *Wanaque Borough Sewerage Auth. v. Township of W. Millford*, 144 N.J. 564, 575, 677 A.2d 747 (1996). There is an excellent discussion of this in *Commerce Partnership 8098, Ltd. Partnership v. Equity Construction Co.*, 695 S.E.2d 383, 386-87 (Fla. Dist. Ct. App. 4th Dist. 1997).

It is clear from a review of the authorities that there has been considerable confusion in the law regarding the various terms. Caution must be used in quoting isolated statements of law. For example, an implied contract may be an implied contract in fact or a contract implied in law, a completely separate concept. Although there are references that may not suggest this conclusion, In Virginia, *quantum meruit* is available in those situations where the claimant bases its claim on a contract implied in fact. See *Marine Dev. Corp. v. Rodak*, 225 Va. 137, 144, 300 S.E.2d 763 (1983),

citing *Hendrickson v. Meredith*, 161 Va. 193, 198, 170 S.E. 602 (1933); *Mongold v. Woods*, 278 Va. 196, 202-03, 677 S.E.2d 288 (2009). Typically, *quantum meruit* is alleged as an alternative to a claim of an express contract. If there is an express contract there is no need to proceed on an implied in fact contract. If the claimants seek recovery on this basis, they must make factual allegations in support of their claims.

Unjust enrichment appears to be a much broader equitable concept that is designed to prevent the unjust retention of a benefit. Once again, there has been considerable confusion in the law. In Virginia it appears to be broad enough to include theories of recovery that are based on implied in fact contracts or implied in law contracts. In other words, it has been used to define a goal, to avoid unjustly enriching another.

In *Schmidt v. Household Finance Corp.*, 276 Va. 108, 116, 661 S.E.2d 834 (2008), the Supreme Court set forth the elements for unjust enrichment in Virginia. I note the concern that these elements seem to be drawn from an implied in fact contract claim as it relates to the knowledge and reasonable expectation of the defendant. See later discussion of *Schmidt* and *Nossen*. In doing so, they did not draw a distinction between implied in fact and implied in law contracts, quasi contracts. The Supreme Court cited *Nedrich v. Jones*, 245 Va. 465, 476, 429 S.E.2d 201 (1993), which relies on *Mullins v. Mingo*, 176 Va. 44, 51, 10 S.E.2d 492 (1940). In *Mullins*, the issue of whether a contract existed was decided by a jury based on conflicting evidence. There was no written contract. It appears that the issue was submitted to the jury on whether a contract should be implied in fact based on the conduct and course of dealings. The Supreme Court observed that, in the absence of a contract, there could be no recovery in *quantum meruit*. The contract that was lacking appears to have been an implied in fact contract.

In contrast, in *Po River Water & Sewer v. Indian Acres Club*, 255 Va. 108, 114-15, 495 S.E.2d 478 (1998), the Supreme Court stated that the trial court erred in failing to grant relief on a cross-bill that requested equitable and declaratory relief under the theory of *quantum meruit*. "To avoid unjust enrichment, equity will effect a contract 'implied in law' requiring one who accepts and receives services of another to make reasonable compensation for those services." Here, although they use the term *quantum meruit*, it refers to a contract implied in law or quasi contract. The authority for this is *Marine Dev. Corp. v. Rodak*, which as noted earlier was based on a contract implied in fact.

Unjust enrichment is a term that has been used in several senses and is a broad equitable concept. It is a result that the law seeks to prevent. See *Belcher v. Kirkwood*, 238 Va. 430, 432-34, 383 S.E.2d 729 (1989); *Kern v. Freed*, 224 Va. 678, 680-81, 299 S.E.2d 363 (1983). Although Virginia has used it to apply in its broader sense, some commentators believe that it is a concept that applies when there is an absence of a contractual relation

between the parties. In other words, it should be limited to quasi contract or implied in law contracts. 66 Am. Jur. 2d, *Restitution and Implied Contracts*, § 9, § 37. Unfortunately, Am. Jur. 2d, § 3, creates some confusion by unartfully referring to implied in fact contracts as quasi contracts. In other sections, they observe the distinction. See § 11.

I conclude that, in Virginia, the Courts have used the term unjust enrichment in the broader sense, and it may be used to describe implied in fact contracts or implied in law contracts. Given the circumstances of the parties, it is important for the claimants to specify the facts upon which these claims are based. More specifically, they should allege sufficient facts showing the basis for an implied in fact contract if they rely on *quantum meruit* or sufficient facts to either allege an implied in fact contract or implied in law contract under the unjust enrichment claim. With multiple defendants, they should specify the basis for the claim against each defendant.

To the extent they have alleged that Presidential as tenant was the landlord's agent, then, given the allegation of the written express contract signed by the tenant, they need to allege the basis for proceeding under a theory of an implied in fact contract that would impose liability upon the defendants. If any claim other then the mechanics' lien claim is sought against the new owner, Beaumeade Dulles 28 Golf Associates, L.L.P., or the new tenant, 1757, these should be clearly set forth.

To the extent they seek recovery for unjust enrichment, they must allege facts sufficient to met the requirements of *Schmidt v. Household Finance Corp.*, 276 Va. 108, 116, 661 S.E.2d 834 (2008). Numerous authorities have stated the elements of a claim for unjust enrichment. As noted, caution must be used because of the confusion surrounding these terms. These have been stated in various different words, and there is no consistency. See e.g. the difference in definitions in *Schmidt v. Household Finance* and *Nossen v. Hoy*. In *Nossen*, the elements are stated differently. While the claimant must show knowledge on the part of the defendant that the benefit is being confirmed, it is based on a "reasonable expectation theory," i.e., the defendant should reasonably have expected to pay or society's reasonable expectations would be defeated by nonpayment. In *Schmidt*, the second element is only the first portion of this disjunctive, the defendant's knowledge that he should reasonably have expected to repay. Regardless of the issues I have discussed relating to the cases failing to observe the distinction between implied in fact and implied in law contracts, this is the most recent case that defines the elements.

548

*Fraudulent and Voluntary Conveyances*

Many of the claimants have advanced statutory claims for fraudulent and or voluntary conveyances. Under § 55-80 and § 55-81. These are resolved individually in the specific rulings Unlike a common law claim for fraud, these are statutory claims for fraud under § 55-80. The law does not require the same level of specificity in the pleadings. Further, the law recognizes certain badges of fraud.

To the extent a demurrer is sustained, leave is granted to amend within twenty-one days of the entry of the order unless noted.